JAMES ELWELL v. F. M. TATUM ET AL.

NO. 258.

1. **Nominal Parties.**—It appearing that the plaintiff was the endorsee without consideration, and only for convenience, of a number of bonds or promissory notes, the defendants, the makers of such obligations, can make any defense they could if sued by the original payee or payees.

2. **Bona Fide Holder.**—A payee of a negotiable note became its owner after it had been passed into the hands of a bona fide holder in course of trade. In regaining possession of such note the payee is not a bona fide holder, and the maker can urge all defenses that could have been made had the note never changed possession or owners.

**3. Fact Case.**—See facts held sufficient to prove that a loan of money made by trustees was made upon the credit of property mortgaged by the trustees to secure the loan.

**4. Trustees of Unincorporated Organization.**—While it is the general rule that persons contracting in name of an unincorporated organization are personally liable, yet to the rule are exceptions. Where, as in this case, upon full knowledge of the facts, it was shown that the loan was made upon the property, and the property was mortgaged to secure the loan, the trustees are not liable, although acting for a church not incorporated.

**5. Pleading — Non est Factum.** — The statutory rule requiring pleas of non est factum to be sworn to does not apply to a defense to a suit upon promissory notes wherein the execution of the notes is admitted, and circumstances are shown from which nonliability of the makers resulted as conclusion of law.

Appeal from Lampasas.    Tried below before Hon. W. A. Blackburn.

*Jones, Kendall & Sleeper*, for appellant.—1.  A negotiable instrument signed by persons who are trustees of an unincorporated society, with only the addition of their official character after their signatures at the foot of the instrument which they promise to pay, is absolutely binding on the signers.    Tunstall v. Wormley, 54 Texas, 476; Story on Agency, secs. 280, 281; Bacon on Ben. and Life Ins. Soc., secs. 115, 128; Lewis v. Tilton, 64 Iowa, 220; McCandless v. Canning Co., 16 Am. St. Rep., 429, and note; Tarver v. Garlington, 13 Am. St. Rep., 628, and notes.

2.  The trustees of a church who executed a negotiable instrument or obligation to pay money, which on its face is binding on them personally, can not escape liability thereon by showing that at and before the signing of such instrument it was the understanding between them and the payees therein that neither they nor the church should be personally bound to pay such obligation, except to the extent of certain property conveyed to secure the payment of such obligation. Belcher v. Mulhall, 57 Texas, 17; Rountree v. Gilroy, 57 Texas, 176; Brown v. Spofford, 95 U. S., 482; Dan. on Neg. Ins., sec. 81.

3.  If an agent is sued on a promissory note so executed by him as to show that he is prima facie liable, to escape liability by showing it was intended to bind his principal and not himself, he must allege and prove that his principal is a being recognized in law, and an unincorporated society is not such a being.  Traynham v. Jackson, 15 Texas, 170; Bacon on Ben. and Life Ins., secs. 115, 128; Lewis v. Tilton, 64 Iowa, 220.

4.  Equity will not relieve a person from liability on an obligation which he has deliberately executed, because such liability is different or greater than he supposed at the time of execution.    Custard v. Custard, 25 Texas Supp., 49; Cannon v. Hemphill, 7 Texas, 198; Hunt v. Rousmaniere, 1 Pet., 1; Bank v. Daniel, 12 Pet., 32; Story on Eq., 111; Kerr on Fraud

and Mist., 428; 2 Pomer Eq. Jur., sec. 843; Rector v. Collins, 46 Ark., 167.

*W. B. Abney* and *Mathews & Wood*, for appellees.—1. The notes sued on and the deed of trust set forth in defendant's answer, when construed together, show that it was not the intention of the parties to the transaction that the signers of the notes should bind themselves personally, but that it was their intention that only the mortgaged property should be bound. Carpenter v. Farnsworth, 8 Am. Rep., 360, and notes; Mott v. Hicks, 1 Cow., 513, 539; 1 Add. on Con., secs. 80, 82, 83; Means v. Swordstedt, 2 Am. Rep., 333, last note.

2. If the notes sued on and the mortgages described in defendants' answer, construed together, do not show that defendants did not intend to bind themselves personally, but only intended to bind the mortgaged property, still there is only a prima facie personal liability thereon; and the defendants having alleged that it was not the intention of the parties to the transaction that the defendants should be bound personally, but only that the lands mortgaged should be liable for the debt, the plaintiff's demurrer was properly overruled. Traynham v. Jackson, 15 Texas, 170; Hueske v. Broussard, 55 Texas, 205; Haile v. Pierce, 32 Md., 372; McKensey v. Edwards, 10 S. W. Rep., 815; Story on Agency, secs. 154, 157, 160a, 161, 284; Byles on Bills, 63 (*38); 1 Greenl. on Ev., sec. 282; 2 Pome. Eq., sec. 845.

3. Where the makers of a promissory note are trustees or agents, and they sign same in such manner as that they become prima facie personally liable thereon, such presumption of liability may be removed as between the original parties by proof that the note was in fact given by the makers as agents, with payee's knowledge. And when the note has been executed by persons who were trustees of an unincorporated society, with only the addition of their official character after their signatures, it may be alleged and proved that it was not the intention of the parties to the instrument that the signers should be bound personally, but that it was their intention only to bind certain property which the signers held as trustees, and upon which they, at the time of the execution of the note, also executed a deed of trust to secure the payment of the note. Haile v. Pierce, 32 Md., 372; 1 Dan. on Neg. Inst., sec. 271; 1 Pars. on Bills and Notes, 90; Story on Bills, secs. 74, 75; Story on Agency, sec. 284.

KEY, ASSOCIATE JUSTICE.—This suit was instituted by appellant, James Elwell, against F. M. Tatum, J. F. Lewis, J. H. Galbraith, W. L. Abbott, J. P. Gibson, and George M. Snodgrass, on seven written obligations, denominated bonds, and forty interest coupons, originally attached to said bonds. The bonds were signed by the defendants, and immediately following their signatures are the words, " Trustees M. E. Church South,

at Lampasas." The coupons are signed by the defendants without any other words.

The defendants pleaded a general denial, and that the obligations sued on were executed by them as trustees for the Methodist Episcopal Church South, at Lampasas; that the consideration for which they were given was money loaned to said church association, upon the understanding that the same was to be secured by trust deeds upon certain real estate belonging to said church, the title to which was vested in defendants as trustees, and that defendants were not to become personally liable for said debt.

It being made to appear that Elwell was only nominally a party to the suit at the time of trial; that the Texas Loan Agency, a corporation, was the only one who would have been benefited by a recovery; that said corporation controls the prosecution of the case, it must be regarded as the real plaintiff. This being the case, it is not necessary that this court determine whether or not the obligations sued on were negotiable instruments. One of them was payable to said loan agency, and although it may have been transferred before maturity to a bona fide purchaser, against whom the defense in this case could not have prevailed, nevertheless, having returned to the hands of the original payee, who is now seeking to enforce the apparent liability of the makers of the instrument, the rule that protects the bona fide assignees of negotiable instruments does not apply.

The general rule is, that a bona fide holder of negotiable paper is entitled to the entire world as a market; and to secure this it is necessary that all the rights and advantages possessed by him shall pass to his assignee, even though the latter may have notice of such facts as would have defeated any right of recovery had the instrument remained in the hands of the original payee. An exception to this rule is, that if the paper returns to the original payee, it is not shielded as it was in the hands of the bona fide holder without notice, or would have been in the hands of any other person holding under him, but is subject to any defense that could have been made had it never been transferred at all. Dan. on Neg. Inst., sec. 805.

It follows, therefore, that as to the bond made payable to the Texas Loan Agency, said corporation having reacquired the ownership of said bond, and being in fact the plaintiff in this suit, it is immaterial whether said bond was negotiable or not.

As to the other obligations sued on, it is shown that their payment was guaranteed by the Texas Loan Agency; that they were transferred by endorsement to James Elwell; that said transfers were made to Elwell as a mere matter of convenience to avoid a multiplicity of suits, and not in due course of business and for a valuable consideration. Therefore, though they may have been negotiable paper and assigned to him before

maturity, he is not entitled to protection as a bona fide holder, etc. Having obtained them from the original payees, the defendants are not deprived of any defense they may have had as against said payees, unless Elwell acquired them in good faith, for a valuable consideration, in the ordinary course of business, before maturity, and without notice of facts which would impeach their validity. Dan. on Neg. Inst., sec. 769a. If we eliminate Elwell, who is a mere figurehead, and consider the fact that the Texas Loan Agency is the owner of these obligations and the real plaintiff in the suit, the same result will be reached; because the testimony shows that it did not obtain them before maturity; that it acquired them from the original payees; that it acted as agent for said payees in the transaction that resulted in their execution, and had notice of all their imperfections.

Having shown, therefore, that any defense that could have been interposed by the defendants against the original payees is available in this case, we reach the question, Do the facts established sustain the conclusion of law, that the defendants are not individually liable on said obligations?

The essential averments of the defendants' answer are sustained by the testimony. The negotiations for the loan was conducted by the agent of the payees named in the obligations sued on, on the one hand, and an agent representing the trustees of the Methodist Episcopal Church South, at Lampasas, on the other hand. The proposition by the latter was to pledge a specific fund—that is, encumber certain real estate, the title to which was vested in certain persons as trustees of the church. After personal inspection of the property and satisfactory investigation as to its value, this proposition was accepted, without reference to the names of the church trustees, their financial standing, or ability to pay. The transaction was in rem; it had relation to specific property, and the intention was that said property, and nothing else, should be liable for the money loaned.

In Traynham v. Jackson, 15 Texas, 170, the note sued on read as follows: "Twelve months after date, we, the trustees of Chappell Hill College, promise to pay T. J. Jackson or order, three hundred dollars." This was signed by eight persons. The Supreme Court held, that although prima facie the defendants were personally liable, yet they might allege and prove that Chappell Hill was a corporate body, that they were trustees thereof, had authority to make said contract on its behalf, that the note was made with the intention of binding said corporation alone, and not the defendants personally, which was known to the plaintiff, the payee, and that such facts would discharge the defendants from personal liability.

It is contended that the doctrine announced in that case does not apply

to the case at bar, because it was not shown that the Methodist Episcopal Church South, at Lampasas, was a corporate body; and Lewis v. Tilton, 64 Iowa, 220, and other authorities are cited, holding that persons contracting in the name of an unincorporated organization are themselves personally liable.

As a general rule this may be true, but there are exceptions to it. A standard author on the subject of agency states these exceptions in this language:

"But although it is thus true that persons contracting as agents are ordinarily held personally responsible, where there is no other responsible principal to whom resort can be had, yet the doctrine is not without some qualifications and exceptions, as indeed the words ' ordinarily held ' would lead one naturally to infer. For independent of the cases already suggested, where the contract is or may be treated as a nullity on account of its inherent infirmity or defective mode of execution, other cases may exist in which it is well known to both of the contracting parties, that there exists no authority in the agent to bind other persons for whom he is acting, or that there is no other responsible principal; and yet the other contracting party may be content to deal with the agent, not upon his personal credit or personal responsibility, but in the perfect faith and confidence that such contracting party will be repaid and indemnified by the persons who feel the same interest in the subject matter of the contract, even though there may be no legal obligation in the case." The question generally is, " to whom is the credit knowingly given, according to the understanding of both parties?" "The law in all these cases pronounces the same decision; that he to whom the credit is knowingly and exclusively given is the proper person who incurs liability, whether he be the principal or the agent." Story on Agency, sec. 288; see, also, Bacon on Ben. Soc. and Life Ins., sec. 128.

In our opinion, the case under consideration is not embraced within the general rule, but belongs with the exceptions above indicated. The reason underlying the general rule is, that when persons execute a written instrument securing a valuable right and showing prima facie a personal liability, the courts will not give it a construction that secures no right whatever. Construing together all the instruments that were made at the time those sued on were executed, they secure to the persons named in the latter as payees substantial and valuable rights, regarded at the time by said payees, acting by their agent, as amply sufficient to protect them from loss. The rights thus secured consisted in the legal encumbrance of the lands described in the trust deeds—the creation of a fund for the payment of the money advanced to a church organization—when it was expected that the security would always be worth more than the debt, and not intended that any individual should become liable for said debt.

Our conclusion is, that the trial court committed no errors in the rulings complained of nor in rendering judgment for appellees, and its judgment will be affirmed.

*Affirmed.*

Delivered December 20, 1893.

ON MOTION FOR REHEARING.

KEY, ASSOCIATE JUSTICE.—It is strenuously insisted in appellant's motion for a rehearing, that the trial court erred in permitting appellees to introduce their evidence in support of the defense set up in their answer, because, it is alleged, appellees' answer constituted a plea of non est factum, and was not sworn to, as required by statute.

We do not think appellees' answer is such as the statute requires to be verified, because it does not constitute a plea of non est factum. It admits the execution by appellees of the instruments sued on, and states the circumstances under which they were executed; appellees' contention being that when said instruments are construed in the light of these circumstances, they should not be held personally liable thereon.

All other questions presented by the motion were considered in our former opinion, and we adhere to the views therein expressed. The motion for rehearing is overruled.

*Motion overruled.*

Delivered March 28, 1894.