## McKAY et al. v. MATTHEWS et al.
### (No. 359.)

(Court of Civil Appeals of Texas. Waco. May 13, 1926.)

1. **Bills and notes** ⟠485—**Whether defendant indorsed notes merely to indicate source from which payer received money may be determined on unverified plea as statutes, providing that written instruments on which pleading is founded are to be received in evidence unless denied under oath, merely authorize their introduction without proof of execution (Vernon's Sayles' Ann. Civ. St. 1914, arts. 588, 1906, 3710; Rev. St. 1925, art. 573).**

Whether defendant indorsed notes on payer's request merely to indicate source from which payer received money may be determined on an unverified plea, without affidavit of forgery, as Vernon's Sayles' Ann. Civ. St. 1914, art. 588, providing indorsements are to be regarded as proved, unless affidavit of forgery is filed, and article 3710, providing that written instruments on which pleadings are founded are to be received in evidence unless denied under oath, merely authorize their introduction in evidence without proof of execution, in view of Rev. St. 1925, art. 573, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1906.

2. **Bills and notes** ⟠514—**In suit on notes where defendant alleged that he indorsed notes merely to show that payer's wife received money given in payment from estate of decedent, surrounding circumstances are admissible to determine parties' intent.**

In suit on notes where defendant alleged that he indorsed merely to indicate that the payer's wife received the money given in payment from estate of decedent, court may hear proof of surrounding circumstances, relative position of parties, subject-matter, each party's connection therewith, etc., in order to determine their real intent.

3. **Bills and notes** ⟠279—**In suit on notes where defendant alleged that he indorsed notes merely to indicate that payer's wife derived money from estate of decedent, relation between parties should control more than form of transfer.**

In suit on notes where defendant alleged that he indorsed notes merely to indicate that payer's wife derived money from estate of decedent, relation between parties should control more than form of transfer.

4. **Pleading** ⟠9.

Pleading of facts showing fraud or mutual mistake is sufficient without pleading them by name.

5. **Husband and wife** ⟠90.

Where wife consented that her money be used to pay lien notes against homestead, she cannot recover money from payee.

Appeal from District Court, Henderson County; Ben F. Dent, Judge.

Suit by J. H. McKay and others against Thomas M. Matthews and others, in which named defendant filed cross-bill against J. R. O'Neal and another. From the judgment, plaintiffs appeal. Affirmed.

Justice & Culbertson, of Athens, for appellants.

J. J. Faulk, of Athens, for appellees.

STANFORD, J. On November 17, 1919, appellee Matthews sold to J. R. O'Neal 138 acres of land for $3,876.80, evidenced by 12 vendor's lien notes for $325 each, except the last one, which was for $300, payable one each year. On November 27, 1919, O'Neal and wife sold said land to J. R. Carder for $4,954, $1,400 in cash, and Carder assumed the payment of the last 11 of the said notes executed by O'Neal to appellant Matthews. On December 13, 1921, J. R. Carder and wife, Ada Carder, executed an oil and gas lease

on said land to J. W. Caldwell, for the consideration of $100. On February 22, 1921, J. R. Carder paid the interest due on the last 11 of said notes and also the principal of notes 2, 3, and 4 for $325 each, J. R. O'Neal having paid the first one, and Matthews, the owner and holder of all of said notes, signed an indorsement on the back of said notes, which would indicate they were transferred to the McKay estate, and delivered same to J. R. Carder. These are the notes sued on by the McKay heirs, Mrs. Ada Carder being one of said heirs and also the wife of J. R. Carder. In the suit they pray for judgment for their debt and a foreclosure on said land, and if said land does not bring enough to pay their debt, then for judgment against appellee Thos. M. Matthews in a sum necessary to pay off said notes, etc., and in case they are not entitled to a foreclosure, then that they have a personal judgment against Thos. M. Matthews on his indorsement, and pray in the alternative for the recovery of said land. Afterwards, on April 21, 1924, J. R. Carder and wife sold said land to J. W. Carpenter for $138 cash and vendor lien notes for $4,692, but on December 17, 1924, J. W. Carpenter reconveyed said land to J. R. Carder and wife, Ada Carder, in consideration of the cancellation and surrender of said vendor lien notes for $4,692.

Appellee Matthews in his answer did not deny signing the indorsement on the back of the notes sued on, but alleged that the money used by J. R. Carder in paying off said three notes was money belonging to Mrs. Ada Carder, which she received as an heir of the McKay estate, and that at the time J. R. Carder paid off said notes, he requested a statement to show that said money had come through the McKay estate and had been used to pay said notes, and that said memorandum was placed on said notes only for such purpose, and that Carder might be able to show his wife and the other McKay heirs that it was so used, and that it was not intended by him nor by J. R. Carder that he should be bound as an indorser; that said notes had been in the custody of Carder and wife since they were paid off; that they were estopped from suing on said notes, etc. Appellee Matthews, in a cross-bill, also sought a recovery against O'Neal and J. R. Carder on the remaining eight vendor's lien notes still unpaid, and a foreclosure on the land.

The case was tried before the court without a jury, and judgment rendered against plaintiffs, appellants here, and in favor of appellee Matthews on his cross-bill, with a foreclosure of his vendor's lien. The trial court filed findings of fact, which will be referred to hereafter.

## Opinion.

[1] Appellants, in several assignments, contend in various ways that as appellee Matthews failed to allege under oath that the indorsement on said notes was not genuine, and failed to file among the papers in the cause an affidavit charging such indorsement to be forged, as provided in article 588, Vernon's Sayles' Statutes, the court erred in admitting in evidence the circumstances under which said memorandum was made on said notes and what was said by the parties at the time said memorandum was made, tending to show the purpose for which it was made. The record discloses, as shown by the evidence and also by the findings of fact by the trial court, that said notes were given by J. R. O'Neal to Matthews for the purchase money for 138 acres of land; that O'Neal sold said land to J. R. Carder, who, as part consideration for said land, assumed the payment of 11 of said notes; that J. R. Carder and his wife, Ada Carder, moved on the land immediately after the sale by O'Neal to them, and that they had for four years occupied the land as their homestead and were so occupying it at the time of the trial; that the rent of the place was worth $300 per annum, and that they had received for the oil lease $100 and $138 from Carpenter, and that they had never paid anything on the land notes except that paid by J. R. Carder in February, 1921, on which date J. R. Carder, by his personal check on the bank, paid the interest on all 11 of said notes amounting to $375, and also paid off notes Nos. 2, 3, and 4 for $325 each, amounting to $975, making a total of $1,350; that the money so used by J. R. Carder belonged to his wife, Ada Carder, the same having been advanced to her as a part of her interest as an heir of the McKay estate; that said payments were made by J. R. Carder with the knowledge and acquiescence of his wife, Ada Carder; that on the payment of said three notes they were delivered to J. R. Carder, and remained in the possession of J. R. Carder and wife nearly four years, up until about the time this suit was filed; that appellee Matthews never knew that the McKay estate or any one else claimed any interest in or any rights by virtue of said three paid-off notes until the day before this suit was filed; that J. R. Carder at the time he made said payments told appellee Matthews that said money belonged to his wife, Ada Carder, that she had inherited it from the McKay estate, and that he wanted a statement from Matthews showing that the money was paid to him, Matthews, on the notes and that it was money inherited by his wife from the McKay estate; that neither Matthews nor Carder intended that the written statement on the back of said notes was to be an indorsement or written transfer to any one. J. R. Carder did not testify. There is no evidence contradicting the version of the transaction given by appellee Matthews.

Article 3710, Vernon's Sayles' Revised Statutes, is a statutory rule of evidence. It pro-

vides, in substance, that when a pleading is founded on an instrument in writing alleged to have been executed by the other party, or by his authority, such instrument should be received as evidence without proof of execution, unless execution is denied under oath, and that "the like rule shall prevail in all suits against indorsers and sureties upon any note or instrument in writing." Article 1906, Vernon's Sayles' Statutes, is a rule of pleading. It provides, in substance, that an answer shall be verified by affidavit when (a) it constitutes denial of the execution by the defendant or his authority of any instrument in writing upon which any pleading is founded if such instrument is charged to have been so executed: (b) when it denies the genuineness of the indorsement or assignment of a written instrument, as required by article 588. Article 588 provides, in substance, that an assignment or indorsement shall be regarded as fully proved unless the defendant shall deny in his plea that same is genuine, and moreover shall file an affidavit stating that he has good cause to believe, and verily does believe, that such assignment or indorsement is forged. It should be noted that the word "genuine," left out of the Revised Statutes of 1925, art. 573, is to be incorporated in the plea, and that the plea is not required to be sworn to, but that the matter required to be sworn to is that the assignment or indorsement is believed to be forged. We think article 588 and article 3710 merely authorize the introduction of the writing in evidence without proof of its execution as at common law. We are of the opinion that an issue of fraud or mistake, inducing the execution and delivery of a written instrument pleaded as the foundation of a cause of action or defense, may be raised and determined upon an unverified plea. Beisert v. Wizig, 103 Tex. 591, 131 S. W. 810; De Wees v. Bluntzer, 70 Tex. 406; Gass v. Sanger (Tex. Civ. App.) 30 S. W. 502; Elwell v. Tatum, 6 Tex. Civ. App. 397, 24 S. W. 71, 31 S. W. 434; 31 Cyc. p. 532.

[2-5] It is very evident, under the facts of this record, that appellee Matthews could not have made the affidavit of forgery provided for by the statute, for he admitted the signing of the memorandum on the back of each of said notes, but explained fully both by pleading and evidence the facts and circumstances surrounding said transaction, and the purpose and intention of said memoranda, and the intention of both himself and the said J. R. Carder in his signing said purported transfers. It is immaterial whether J. R. Carder was acting for his wife, Ada Carder, or the McKay heirs in paying off said notes and taking said purported transfer. If he was representing his wife, the record shows she fully consented and acquiesced in his paying the interest on all of said notes, and in paying off three of them in full. If he was representing the McKay heirs, then

said heirs, through him as their agent, had full knowledge of the fact that he did in fact pay off said three notes and the accrued interest on all the others. We think it was permissible, the case being tried before the court, for the court to hear proof of all the surrounding circumstances, the relative position of the parties, the subject-matter, and as to how each party was connected therewith, etc., in order to determine the real intention of the parties; and when such evidence established without any conflict that no transfer was intended to be made to any one, the trial court was correct in so holding. We must remember that these three notes were obtained from Matthews, the owner, by J. R. Carder, whose duty it was to pay same, and to permit Ada Carder or the McKay estate, which would be the same in effect, four or five years after said notes are paid off, to take advantage of a supposed transfer, which the said Carder induced appellee Matthews to sign, and thereby compel Matthews on said supposed indorsement to refund the only payment made by the Carders, and give them the value of the use of said farm for five or six years, amounting to some $1,500, would enable them to perpetrate a fraud, and this course of conduct, our courts, which are courts of both law and equity, will not permit. The form of assignment or transfer used in a case of this kind should not so much control as the relation subsisting between the parties. Smith v. Cooley (Tex. Civ. App.) 164 S. W. 1053; Ryer v. Gass, 130 Mass. 227; 2 Pomeroy, § 794; Peightal v. Cotton States Bldg. Co., 25 Tex. Civ. App. 390, 61 S. W. 428. The facts as found by the trial court and as shown by all the evidence clearly show that said purported transfer was obtained by reason of fraud or mutual mistake, and while appellee Matthews did not in his pleadings by name allege fraud or mutual mistake, he did plead the facts showing such, and this, we think, was sufficient to raise such issues and it was not necessary for such pleading to be under oath. And the evidence being ample to show said transfer was so obtained, the trial court was correct in refusing to give effect to said purported transfer. The court found that said three notes sued upon by plaintiffs, appellants herein, were paid off and discharged, and we think this finding is sustained by the evidence. In any event, we think the trial court rendered the proper judgment, in that the record shows, and the court so found, that the money used to pay off said three notes was not furnished by the McKay heirs, but by Mrs. Ada Carder, and that Mrs. Carder consented and acquiesced in said money being used to pay off and discharge said notes against the homestead on which she then resided, and still resides, and having consented for said money to be so used, she cannot recover it back. Texas

Co-operative Co. v. Clark (Tex. Com. App.) 239 S. W. 201, and cases there cited.

We have considered all of appellant's assignments, and, finding no reversible error, overrule all of them.

The judgment of the trial court is affirmed.