[232] HIRAM CLOSE vs. WM. FIELDS — Appeal from Galveston County.

[See same case, 9 Tex. 422; 13 Tex. 623.]

The *bona fide* holder of a bill of exchange, in which a blank was left for the name of the payee, may at any time fill the blank with his own name, and having done so, he can maintain a suit against the drawer or acceptor.

Whether the mere naked possession of a bill of exchange by the acceptor affords any evidence of payment depends upon the circumstances under which it was drawn. It is, therefore, a question of evidence for the jury. If it were an accommodation bill, drawn for the purpose of obtaining a loan, the possession by the acceptor would not even be *prima facie* evidence of ownership, or of payment, unless it were shown the bill had been in circulation after acceptance. But if drawn against a pre-existing debt, due from the acceptor to the drawer, the possession of the bill by the acceptor would be presumptive evidence, at least, of a payment, to that extent, of the pre-existing debt.

Interest is a creature of the statute and cannot be allowed in cases not embraced in its terms. Interest on verbal or implied contracts, not being specially provided for by the statute, cannot be allowed. [1 Tex. 105.]

This was an action brought by the appellee to recover fifteen hundred dollars, alleged to have been received by the appellant as his trustee.

The defendant below pleaded payment and setoff. The plaintiff proved the receipt of the money by the defendant, and in support of his pleas, the defendant, among other evidence, offered three drafts of the plaintiff, the signatures to which were admitted, and which were in the following words:

No. 1. "Hiram Close, Trustee,

You will please pay            or order four hundred dollars, par funds, when collected, of the proceeds of a note now in your hands, drawn by Robert Rose and Robert D. Johnson, and made payable to me for six hundred dollars, par funds.            WM. FIELDS.

"Galveston, March 24, 1841."

[233] No. 2. "Hiram Close, Esq.: Sixty days from date of this, please pay to bearer one hundred and twenty dollars, and very much oblige            WM. FIELDS.

"June 5, 1841."

No. 3. "Hiram Close, Esq.: Fifteen days from date of this, please pay Messrs. Van Alstyne & Co., or order, sixteen dollars, par funds, and oblige yours, etc.,     WM. FIELDS.

"August 23, 1841."

Across the face of the first and third of these drafts was written, "Accepted, Hiram Close." All of them were rejected by the court as not affording evidence of payment, without proof that they had been in circulation after acceptance, or proof that they had actually been paid by the drawee.

The plaintiff obtained a verdict and judgment for $613 debt, and $201 interest, and costs of suit. The defendant moved for a new trial, upon various grounds, but relied mainly upon the alleged errors of the court in ruling out the drafts as testimony; upon the misdirection of the judge in respect to the allowance of interest, and upon an allegation of newly discov-

ered evidence; and this motion being overruled, he appealed to this court.

*J. B. Jones,* for appellant, cited in support of the validity of the drafts in the hands of the defendant, 3 McCord, 482; 3 Hill, 112; Chitty on Bills, 62-3.

*Cole,* for appellee, cited, in support of the decision of the court in ruling out the drafts, 2 Campb. N. P. 439; 2 Stark. Ev. 276; 2 Mau. & Sel. 90; 5 Taunt. 529; 13 Mass. 158.

In support of the decision overruling the motion for a new trial, he cited 8 Cow. 223; 6 id. 682; 2 Wend. 352; 3 Hill, 250; 2 id. 576; 3 Wash. C. C. 58; 5 Cow. 21; [234] 18 Johns. 489; 2 Kane, 260; 4 Johns. 425; 1 Hall, 382; 3 Kane, 186; 5 Wend. 114; 1 Sumner C. C. 482; 4 Wheat. 213; 6 id. 542; 5 Mason C. C. 173; 2 Scammon, 350. Upon the question of interest, he cited 9 Johns. 71; 3 Cow. 432; 3 Caines, 266; 2 Burr. 1077; 1 Pick. 118; 1 Marsh. 584, and 10 Wend. 96.

Mr. Justice WHEELER, having presided at the trial in the court below, did not sit in this case.

Mr. Justice LIPSCOMB, after stating the facts, delivered the opinion of the court.

The first objection taken to the admissibility of the evidence applies to the first two orders, that the name of the payee was in blank. In Bayley on Bills, 30, 31, it is said, if a bill or note be issued with a blank for the payee's name, any *bona fide* holder may insert his own name as payee, . . . . but until the blank is filled, it is not a bill or note, unless, perhaps, where it may be considered in legal operation as payable to the order of the drawer. Where a bill is payable to a fictitious person, it has been held to be, in effect, payable to bearer. Chitty on Bills 93, 6th Am. edition; and this was said to have been ruled in Gibson v. Minet, 1 H. Bl. 586. There can be no doubt, from the authorities, that if this paper is to be treated as a bill of exchange, the name of the payee could have been inserted in the blank by any *bona fide* holder of the paper, and would have enabled him to sue the acceptor or the

drawer. The second is payable to bearer, and on protest would authorize a suit against the drawer in the name of the holder. The court below seemed to have grounded the objection to the testimony on the fact that there was no proof that these bills had ever been in circulation after acceptance; and the case of Pfiel v. Vanbatenberg, in 2 Campb. 439, is relied on as sustaining the decision. The action was for money lent, and he, the plaintiff, alleged that he had accepted and paid several bills of exchange for the defendant's accommodation. The bills were produced [235] by the plaintiff and proved to have been drawn by the defendant; they were likewise receipted in the usual form of bills paid, but it did not appear by whom the receipts were written. It was contended that the simple production of the bills by the acceptor was *prima facie* evidence of payment. Lord Ellenborough said: "Show that the bills were once in circulation after being accepted, and I will presume that they got back to the acceptor's hands by his having paid them. But when he merely produces them, how do I know that they were ever in the hands of the payee or any indorsee, with his name upon them as acceptor. It is very possible that when they were left for acceptance he refused to deliver them back, and having detained them ever since, now produces them as evidence of a loan of money." This seems to be the general doctrine as laid down by Chitty, and it has been recognized by the supreme court of Louisiana, but in the case of Bell v. The Administrator of Norwood, 7 La. 95, with this modification, that where there has been an account on a long course of commercial transactions between the parties, in which payments are charged for sums paid to take up drafts accepted by the plaintiff, the possession of the draft by the acceptor is *prima facie* evidence of payment. Judge Bullard, in acknowledging the general doctrine that an acceptor is bound to show that it had been put in circulation after acceptance, and its payment makes the exception, that the application of the strict principle in cases like the one before the court would be productive of great injustice, and that it should be confined to cases where the acceptor declares upon a bill of exchange against the drawer. It may, however, be here re-

marked, that according to the principles of liability of the drawer to the acceptor for accommodation, the acceptor can never sue on the bill; he must sue as for money loaned or paid to the use of the drawer. Chitty on Bills, 569. The judge must have intended to say, that in suits brought by the acceptor against the drawer or maker on the implied contract to indemnify him, the principle [236] would apply. It however may be questioned if the rule laid down by Lord Ellenborough is now sustained in the English courts. On the subject of presumptive evidence, Cowen and Hill in their notes on Phillips, vol. 2, p. 314, note 306, after laying down other grounds from which a presumption of satisfaction or payment would arise, add, so where a bill of exchange was found in the hands of the acceptor; and refer to the case of Gibbon v. Featherstonhaugh, 1 Stark. N. P. Cases, 225. I have not been able to find the authority, and therefore cannot know whether in that case the acceptor sued the drawer for so much money, or whether he only used it in defense as payment; but from the general accuracy of the annotators, I have no doubt of the correctness of the reference, and that it will show that in some cases the possession of the acceptor raises the presumption that he had paid it. In the case of *Garlock v. Geortner,* 7 Wend. 198, the suit was brought to recover the amount of a note alleged to have been given by the defendant, the maker, to the plaintiff, the payee, in the possession of the maker; the court *a quo* would not permit the plaintiff to prove the circumstances under which the note came into the possession of the maker. Judge Nelson in reversing the judgment says: " The plaintiff should have been allowed, if he could, to explain the possession of the note by the defendant, as well to rebut the *prima facie* inference of extinguishment of it, as to account for its nonproduction on the trial." In the case of *Alvord v. Baker and Cooper,* 9 Wend. 323, Chief Justice Savage says: " Orders for goods in the hands of the drawer are evidence of goods sold to the drawer and delivered to the payee at his request. In this respect they differ from orders for the payment of money which are presumed to be drawn, nothing appearing to the contrary, upon funds in the hands

of the drawee; and if paid, give no cause of action against the drawer, unless that presumption is rebutted by other evidence." Leaving the inference, as I understand it, that but for the presumption that the draft had been taken in payment of [237] the precedent indebtedness of the drawee, that the *prima facie* character of the evidence from the possession would arise. It is not in any case ruled not to be *prima facie* evidence of payment; but in the hands of the acceptor, it is held not to be evidence of a loan or an accommodation payment to the drawer, but of a payment of a precedent debt.

It seems to be a question of evidence, and its effect is to be determined by the object for which it is offered. If intended as evidence of a loan or payment to the drawer by way of accommodation, then possession of itself will not create *prima facie* evidence of the fact, because it would be met by the opposite presumption, of payment, on account of precedent indebtedness. If, on the other hand, it is intended as nothing more than evidence of the payment of that previous indebtedness to the drawer, there is nothing in the character of the paper, or the use sought to be made of its possession, to obstruct the presumption from possession. It is only offered in evidence of what the law presumes to be the fact, payment of a precedent indebtedness; farther, to illustrate what seems to be the distinction, I will suppose that Close had sued the plaintiff, Fields, to recover from him the amount of these drafts as an accommodation acceptor, and had offered them in evidence, without any other evidence than proof of the maker's handwriting, and had insisted that his being in possession was evidence of the payment, he could not have recovered, because the answer of the law would have been, true it is, the possession is a presumption of payment, but not by way of loan or accommodation to the drawer, but of payment of what you owed him.

But when sued for, that very indebtedness upon which the drafts were drawn, surely reason and common sense, as applied to the ordinary transactions of mankind, would raise the presumption, that, as the defendant was in possession of the drafts, their office had been performed by payment. True, it is only

presumption, and other circumstances may have been thrown around the transaction to rebut the presumption.

[238] The defendants, not showing to whom payment had been made when the fact of payment was controverted, would have been one of many that might be offered to rebut the presumption of payment; on the ground of a party failing to make proof, when it is supposed. to be in his power to make it; all such should have been left to the jury to decide, whether it was sufficient to repel the presumption arising from possession.

There was no exception taken to the charge of the court in relation to interest; the charge seems to have been given substantially in the language of the statute; if the jury allowed interest where it ought not to have been given, it was a ground for a motion for a new trial; the court having refused a new trial, it would have been competent for this court, if we believed no interest should have been given, to have reformed the judgment, or permitted a *remittitur*, but as the case will be remanded, we will only add that interest is the creature of the statute and cannot be given in cases not embraced in its terms. By the 2d section of an act to regulate interest, Act 1840, p. 8, provides, "That all written contracts ascertaining the sum due when no specific premium or rate of interest is expressed, interest shall be taken, recovered and allowed at the rate of eight per centum per annum, from and after the said sum is due and payable." The construction of this act is, that interest cannot be allowed or recovered unless the amount due is expressed in a written contract; hence it follows, that a verbal or an implied contract can neither of them carry interest. This was decided at the last term of the court in Cloud v. Smith and Adriance, 1 Tex. 102.

The judgment must be reversed and the cause remanded.