C. P. WRIGHT ET AL. V. JOHN T. HARDIE & CO.

No. 350.

1. **Statute Construed—Writ of Error.**

Chapter 91, Laws Twenty-fourth Legislature, 1895, page 144, regulating the practice in applications for writs of error, and requiring that application be filed within thirty days from the overruling of the motion for rehearing, took effect ninety days from April 30, 1895, the day of adjournment. An application filed August 17, 1895, can not be disregarded, as it was filed within thirty days from the time the act took effect, and the former law contained no limitation within which application should be made........ 655

2. **Burden of Proof—Failure of Consideration—Notice.**

Plaintiffs sued as holders of a negotiable note. The makers pleaded failure of consideration, fraud in the assignment of the note, and notice by plaintiffs. There was testimony supporting the plea of failure of the consideration. *Held,* that an instruction was properly refused, that the burden devolved upon the plaintiffs to prove that they acquired the note without knowledge of the fraud. The burden of proof was upon defendants to show notice. Rev. Stats., art. 272.................................656, 657

3. Negotiable Paper Held as Collateral.

The innocent holder of a negotiable note to which there is a valid defense
against the payee is protected, but only to the extent of his interest—the
amount of the debt for which it is held as collateral..................... 657

4. Burden of Proof.

The holder as collateral of negotiable paper, consideration of which has failed
and the defense shown in suit, should show not only that the debt for
which the paper was transferred is unpaid, but also the amount still due.
His recovery should be restricted to that amount...................... 658

5. Same—Refusal of Charge.

The testimony not showing clearly that the debt for which the note sued on
was held had not been paid in whole or in part, it was error to refuse the
requested instruction, that the burden of proof of the existence and amount
of the debt was upon the plaintiffs, for which the judgment is reversed. .660, 661

ERROR to Court of Civil Appeals for Fifth District, in an appeal
from Dallas County.

The opinion sufficiently states the facts.

*Coke & Coke*, for plaintiffs in error.—1. When a negotiable note,
without consideration, is transferred by the holder thereof (the payee)
in fraud of the rights of the maker, in a suit on said note against the
maker by the transferee, the burden is upon plaintiff to show that he
took said note bona fide, and without notice of defendant's equities,
even though same was taken before maturity. Duncan v. Gilbert, 29
N. J. Law, 524; Munroe v. Cooper, 5 Pick. (Mass.), 413; Hazard v.
Spencer, 23 Atl. Rep., 730; Sistermans v. Field, 9 Gray (Mass.), 336;
McKisson v. Stanberry; 3 Ohio St., 156; Rische v. Bank, 84 Texas,
420; Vallett v. Parker, 6 Wend., 615; Clark v. Thayer, 105 Mass., 217.

2. When a negotiable note, without consideration, is pledged as
collateral security by the holder thereof (the payee) in fraud of the
rights of the maker, in a suit on said note against the maker by the
pledgee, he can only recover to the extent of his demand against the
pledgor, and the burden of proof is upon the pledgee to show the
amount of such demand, even though said note was pledged before ma-
turity. Diversey v. Johnson, 93 Ill., 569; Stoddard v. Kimball, 6
Cush. (Mass.), 469; Coleb. Coll. Sec., secs. 31, 32, 78, 92: Maitland v.
Bank, 17 Am. Rep., 632; 1 Dan. Neg. Inst., sec. 832a; Tied. Com.
Paper, sec. 304.

*Cobb & Avery*, for defendants in error.—1. In a suit by an indorsee
upon a negotiable promissory note, when the plaintiff proves that he
is a holder for value, the burden of proof is upon the defendant to
prove that plaintiff had notice when he acquired the note of any fraud
or want of consideration in the note. 1 Rand. on Com. Paper, sec.
1028, p. 726; Hardie v. Wright, 83 Texas, 345; Tillman v. Heller, 78
Texas, 597; Martin Brown Co. v. Cooper, 82 Texas, 242; 1 Dan. Neg.
Inst., 4 ed., secs. 814, 819; Rishe & Sons v. Bank, 84 Texas, 413.

2. The uncontradicted evidence showed, that the note sued on was received by appellants as collateral to a debt for $37,200, and that there was a balance due on this debt amounting to more than the note sued on, and hence the court did not err in refusing the special charges asked, and the verdict is sustained by the evidence.   Hardie & Co. v. Wright, 83 Texas, 345; Smith v. Stevens, 81 Texas, 461.

GAINES, CHIEF JUSTICE.—This case has been submitted upon its merits, together with a motion to dismiss the writ of error.   The motion is made upon the ground that the application for the writ was not filed in time.   The existing law provides, that the application shall be filed in the Court of Civil Appeals within thirty days after the overruling of the motion for a rehearing in that court.   Laws 1895, p. 144.   The motion for a rehearing in the Court of Civil Appeals was overruled on the 20th day of March last, and the application was not filed in that court until the 17th day of August.   The amended act in reference to applications for writs of error did not take effect until the expiration of ninety days from the day on which the Legislature adjourned.   The adjournment took place on the 30th day of April, 1895, so that the application in this case was filed after the law took effect, but within thirty days from that time.   Probably by reason of an oversight on part of the Legislature, the original act, which provided for the organization of this court under the recent amendments to the Constitution, contained no limitation upon the time in which an application for a writ of error from this court to a Court of Civil Appeals should be filed.   It was so held in the case of Taylor v. Ferguson, which was decided in this court at the term before the last. In that case, after a writ of error had been allowed and the judgments of the lower courts had been reversed and the cause remanded, the defendant in error filed a motion for a rehearing and to dismiss the writ of error, upon the ground that the application for the writ was filed more than thirty days after the overruling of the motion for a rehearing in the Court of Civil Appeals.   The motion for a rehearing and to dismiss in this court was denied, upon the ground that the Legislature had prescribed no limitation upon the time in which an application for a writ of error should be filed, and that holding, until the passage of the recent amendment, has ever since been the rule of decision in this court.   The Legislature may provide a shorter period of limitation for existing causes of action.   It may make a statute of limitation for causes when none existed before.   But it can not, by so abbreviating the time in which suit must be brought, take away the right of action altogether.   It must allow a reasonable time after the law goes into effect to bring suit upon actions which are not then barred.   Where the time has been shortened, and the statute has been running against the cause of action at the time the new statute takes effect, the rule adopted by the decisions of this court has been to apply absolutely neither the old law nor the new, but to allow such

proportion of the unexpired period under the old statute as the time prescribed by it bears to the period limited by the new. Odum v. Garner, 86 Texas, 374, and cases cited.

Applying the rule to the present case, there having been no limitation under the original act, we think it results, that the full period should be allowed after the amendment took effect, in view of the fact that only thirty days is allowed under the amendment, which is a period in itself no more than reasonably sufficient to prepare and prosecute an application for a writ of error. We have so ruled on previous applications filed at this term. The motion to dismiss the writ of error is therefore overruled.

The suit was brought by the defendants in error to recover of plaintiffs in error an alleged indebtedness of $2118, with interest, evidenced by a promissory note for that sum, executed on the 15th day of April, 1888, by the plaintiffs in error, and payable to the Farmers' Alliance Exchange of Texas, or order, on or before the 15th day of November next after date. The note was transferred by the payee, a private corporation, to the plaintiffs in the trial court, before maturity. The defendants in that court pleaded, in substance, that the note was executed by them and delivered to the payee as a basis of credit with it for a certain association of farmers, of which the makers were members, with the understanding that the note was to be held to secure collaterally the payment for such merchandise as should be sold by the payee to such association between the date of the execution and that of the maturity of the note; and that it was executed for no other purpose. It was also averred, that the Farmers' Alliance Exchange bound itself in writing at the time the note was executed not to transfer it; and further, that because the members of the association for whose benefit the note was given did not require it, no goods were purchased by such association of the payee during the time stipulated. The defendants also alleged, that when the note was transferred to plaintiffs they had notice of the facts attending the transaction.

Upon the trial, the defendants introduced evidence tending to establish their defense; but upon the question whether the plaintiffs had notice of these defenses at the time they accepted a transfer of the paper, there was a conflict in the testimony. Upon the issue of notice, the defendants requested the court to charge the jury, in effect, that if they believed that the note was fraudulently misappropriated and transferred by the Farmers' Alliance Exchange, the burden was upon the plaintiffs to show that they acquired it without knowledge of the fraud. The court refused the instruction, and its ruling was assigned as error in the Court of Civil Appeals, and is assigned in this court. As a question at common law, there is a conflict of authority as to the burden of proof in such cases; but we think the statute of this State puts the matter at rest with us. Article 272 of the Revised Statutes reads as follows: "The defendant in any action that may be instituted upon any written instrument may plead a want or failure, or partial

failure, of consideration, where such written instrument shall remain in the possession of the original payee or obligee; or when it shall have been transferred or assigned after the maturity thereof; or when the defendant may prove a knowledge of such want or failure of consideration on the part of the holder prior to such transfer.'' This clearly places the burden upon the defendants, and therefore the charge requested was correctly refused.

But the plaintiffs in error—the defendants in the trial court—also complain that the latter court erred in refusing to give a special charge requested on their behalf, to the effect, that if the note sued on was not supported by a consideration passing from the payee to the makers, and if the payee had transferred it to the plaintiffs in fraud of the defendant's rights, to secure a debt, then the plaintiffs could recover only to the amount of the secured debt which remained unpaid, and that the burden was upon the plaintiffs to show that amount. The legal proposition asserted in the requested instruction is sound. Where a negotiable instrument is transferred as a pledge, and the maker has no defense as against it, it seems that the pledgor may recover the full amount, without reference to the amount of the debt secured by it. In case the sum recovered should exceed the secured debt, the pledgee would hold the excess in trust for the pledgor. So where the absolute title has been transferred to an innocent holder for value, it may be that he may recover the full amount evidenced by the instrument, without reference to the consideration, which has passed from him. But the case of an innocent holder of such an instrument, which has been fraudulently transferred to secure the payment of a debt, is different. The doctrine which protects a bona fide purchaser of negotiable paper for value is maintained in part upon principles of commercial policy, but has a deeper foundation in the principle of an equitable estoppel. The maker of a promissory note, by signing and delivering it to the payee, asserts its validity, and by making it payable to the bearer or to the order of the payee, holds out an invitation to all the world to deal with it as evidencing a valid debt. For that reason, and upon the principle that he who trusts most should suffer most, the law shuts off, as against an innocent holder, any defense the maker may have against the payee, in so far as it may be necessary to protect such holder in the rights acquired by his transfer. A recovery of so much upon the collateral paper as is necessary to discharge the debt secured is requisite for the protection of an innocent holder, although as between the maker and payee of the note, the hypothecation may have been fraudulent. More than this the holder can not claim in his own right; nor can he claim as trustee of the transferrer of the instrument, because the maker owes the latter nothing. Accordingly we find that it is generally held, that the pledgee in such a case is limited in his recovery to the amount of his debt. Allaire v. Hartshorne, 21 N. J. L., 665; Fisher v. Fisher, 98 Mass., 303; Bank v. Fowler, 36 Ohio St., 524; Grant v. Kidwell, 30 Mo., 455.

It is a general rule, that where the right of a party to a suit depends upon the existence of a fact which is peculiarly within his own knowledge, the burden is upon him to prove it, and we see no good reason why the innocent holder of a negotiable instrument which has been pledged to him to secure a debt, but which is invalid as between the original parties to the instrument, should be excepted from its operation. It is enough that the maker is required to pay that which, but for the fraud of another, he would not have owed; and it is but reasonable that before the pledgee in such a case can be permitted to recover upon the transferred paper, he should prove not only that his debt is unpaid, but also the amount still due, and that his recovery should be restricted to that amount.

But it is urged, that the undisputed evidence adduced upon the trial showed that there still remained due upon the indebtedness the note was transferred to secure, more than the amount of the note; and that for that reason the requested charge was properly refused. In support of the contention that it was conclusively shown upon the trial that the unpaid balance of the compress debt exceeded the amount of the plaintiffs' demand, it is claimed that it was so held by this court upon a former appeal in this case upon the same evidence. 83 Texas, 345. But although among other strong expressions it is clearly intimated, if not directly asserted, in the opinion then delivered, that the evidence showed that there still remained due upon the compress debt more than the amount of the note, it is to be noted that the remarks were mere argumentative conclusions, and were not necessary to the decision of the case. Upon the first trial the court instructed a verdict for the defendant, and this was clearly error if there was any evidence tending to show a want of knowledge on the part of plaintiffs of the fraud in the transfer of the note, and that any part of the debt it was assigned to secure remained unpaid. There was evidence, as shown by the record, tending to show both facts, and the issues so raised should have been submitted to the jury upon proper instructions.

Here we have a different question. We have held, that the instruction refused by the court was correct as a legal proposition, and the question is, did the evidence demand that it should be given to the jury? If the evidence established beyond controversy that as much or more remained due upon the compress debt as the amount of the note in suit, then it was not error to refuse the charge; but a careful examination of the testimony leads to the conclusion that there was doubt upon the issue, and that its solution should have been left to the jury.

The evidence showed that the note in suit, together with others of like character, were transferred by the Farmers' Alliance Exchange to the plaintiffs, to secure the payment of certain other notes which were made by the exchange for the payment of the purchase money of 240 shares in the Texas Elevator and Compress Company, sold by plaintiffs to the exchange. The notes secured by the transfer amounted in the aggregate to $37,000. On the same day that this transfer was made,

the exchange, in consideration of borrowed money and merchandise, executed to the plaintiffs three other notes; aggregating in amount the sum of $17,500; and to secure the payment of this indebtedness, assigned to plaintiffs still other and different collaterals. The transfer of the collaterals to secure the debt for the compress stock, and that of the notes to secure the indebtedness for borrowed money and merchandise, were made by separate instruments, both of which were dated on the 19th day of July, 1888. On the 15th day of February, 1889, all the indebtedness of the exchange having fallen due and not being fully paid, the parties to the transaction had a settlement, in which the compress stock was taken back for a less sum than that for which it was sold, and a new note taken by plaintiffs for the sum of $13,700, which was recognized as the balance then due upon the two existing debts.

The direct testimony as to the credits showed only that at the date of the settlement $2067 had been collected from the collaterals which were transferred to secure the compress indebtedness, and that $9477 had been collected upon the collaterals to the other debt. There was no direct evidence as to the payment of any other sum upon either indebtedness. The collections on the collaterals were all made about the 20th day of November, 1888. Crediting the sums collected on the collaterals to the compress debt upon that date, and computing interest according to legal rule in this State, there was due upon the debt at the date of the settlement $37,046. Pursuing the same method with the other debt, there remained due upon it at that date $8816. This gives a result very nearly correct; so that, after allowing all known credits, there was due upon the two debts at the date of the settlement, $45,862. Yet Edward Gray, the attorney who had the notes for collection, and who took part in the settlement on behalf of plaintiffs, testified as follows:

"On February 5, 1889, I was an attorney in Dallas, and I had for collection all the notes given by the Farmers' Alliance Exchange of Texas to Hardie & Co., and described in William T. Hardie's deposition. I was representing Hardie & Co. at that time. Hardie & Co. had declared all said notes due, and had advertised the compress stock for sale, and had brought suit on all the notes in the federal court. At that time there was a balance due on all the notes of about $42,700, which amount includes attorney's fees for $2500. The notes provided for 10 per cent attorney's fees, but I only charged $2500 attorney's fees. At that time a settlement was made between Hardie & Co. and the exchange. Hardie & Co. took back the compress stock, which the exchange had bought from them, at a valuation of $31,000, which was $6000 less than said stock had been sold to said exchange. This $31,000 was then credited on the debt of $42,700, which left a balance still due of $13,700. For this the exchange gave Hardie & Co. a note for $13,700, due in three or four months, and by agreement all the collaterals in Hardie & Co.'s hands were retained by them to secure this $13,700.

The compress stock, as shown by Hardie's deposition, was sold to the exchange for $37,200, and in taking it back at the time of said settlement, it was taken back at $31,000, making a difference of $6000. I took part in the settlement, and know the facts connected with it."

According to this testimony, deducting the attorney's fees, the balance due on both debts amounted only to $40,200—which is $5662 less than the balance due as shown by the disclosed credits. This would show that there were unknown credits allowed in the settlement to the amount last named. The balance due upon the compress debt at the date of the settlement, less the attorney's fees, was, as we have seen, $37,046. Deduct from this the $31,000, the price at which the compress stock was taken back, and there is left the sum of $6046 —without the attorney's fees. What proportion of the attorney's fees accrued in the suit upon the compress stock, the testimony does not show. At the times the two debts matured nothing had been paid upon either, and if suit was then brought, as it may have been so far as the testimony discloses, a little more than two-thirds of the fees would have been chargeable upon the compress debt. Add $1750 as attorney's fees to the $6045, and we have a balance due upon the compress debt, so far as disclosed by the known credits, of the sum of $7796. If from this sum the undisclosed credits amounting to $5662 be deducted, there would remain the sum of $2134 as the actual balance due upon that debt after the settlement was made. The note sued on is for $2118, besides interest. Upon the new note for $13,700, in which the two debts were consolidated, there was subsequently paid in collections upon the collaterals to the merchandise debt, $500; and also $4500 in a tract of land which the exchange conveyed to the plaintiffs in partial discharge of the note. This latter payment, it would seem, should be applied to the two debts which were embraced in the note, in proportion to their respective amounts. This would reduce the compress debt to a sum considerably less than the amount due upon the note in suit according to its face. There is a discrepancy in Judge Gray's testimony, because if $42,700 was the balance due upon both debts at the date of the settlement, including the attorney's fees, as he states, and in effect reiterates, then after deducting the $31,-000 for the compress stock taken back, a balance of $11,700 only would have remained; and yet the note which was taken for that balance was for $13,700. This may have been a mere clerical error; but this we can not assume. While we do not hold that the jury should or would have made the calculation as we have made it, or that it is the proper calculation under the evidence, we do hold, that it is a possible result of the testimony, and that therefore the charge under consideration should have been submitted to the jury.

It is clear, that in any aspect of the case there were some credits allowed in the settlement, which the evidence does not otherwise disclose. The burden was upon the plaintiffs to show how these were appropriated, unless, perchance, after applying them all to the com-

press debt, it conclusively appeared that the balance due upon it was equal to or exceeded the amount evidenced by the note in suit. It does not so appear, and therefore, for the error in refusing the charge as to the burden of proof upon that issue, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 21, 1895.