SMITH v. COOLEY et al.

(Court of Civil Appeals of Texas. Amarillo. Feb. 21, 1914. Rehearing Denied March 21, 1914.)

1. PLEDGES (§ 58*)—VALIDITY OF DEBT SECURED—NOTES—CONSIDERATION.

Where plaintiff, as transferee of a vendor's lien note, sued to foreclose, and intervener set up a similar note transferred to him as collateral security for a debt owing him by the vendee, plaintiff might show that the intervener's note had been discharged after it was transferred by the vendor and require the intervener to show the indebtedness due under the obligation for which he held it as collateral.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 186–194; Dec. Dig. § 58.*]

2. ESTATES (§ 10*)—"MERGER."

Merger at law is defined to be when a greater and a less estate coincide in the same person, in the same right, without any intermediate estate. At law the rule is inflexible, but in equity a person may become entitled to an estate subject to a charge for his own benefit, which estate, if he chooses, he can hold and keep the charge alive.

[Ed. Note.—For other cases, see Estates, Cent. Dig. §§ 9–13; Dec. Dig. § 10.*

For other definitions, see Words and Phrases, vol. 5, pp. 4492, 4493.]

3. BILLS AND NOTES (§ 527*)—PAYMENT—EVIDENCE—SUFFICIENCY.

Possession by the maker of a note is prima facie evidence that it has been paid.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1847–1855; Dec. Dig. § 527.*]

4. VENDOR AND PURCHASER (§ 261*)—LIEN—SURRENDER—TRANSFER OF NOTE TO VENDEE.

The transfer of a vendor's lien note by the vendor to the vendee created a presumption of intention on the part of the vendor that the vendee, the maker of the note, should thereafter hold it absolutely as his own property.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–686, 688–695; Dec. Dig. § 261.*]

5. VENDOR AND PURCHASER (§ 266*) — VENDOR'S LIEN—MERGER.

Where a vendee gave two lien notes to the vendor, one of which she transferred to plaintiff, and the other she indorsed and redelivered to the vendee, who was her son, who transferred it to intervener as collateral security for a debt owing by the vendee to intervener, and the evidence showed that, by the transfer from the vendor to the vendee, he became the real owner of the note, it became without effect as to plaintiff or persons other than the vendee and intervener, though the vendor and vendee had agreed that the vendee should negotiate it, and that it was his intention that the debt should not be extinguished.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 687, 713–750; Dec. Dig. § 266.*]

6. VENDOR AND PURCHASER (§ 261*)—LIEN—MERGER.

That the lien reserved was but one lien given to secure the two notes did not prevent a merger as to the note indorsed by the vendor and redelivered to the vendee.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–686, 688–695; Dec. Dig. § 261.*]

7. BILLS AND NOTES (§ 357*) — BONA FIDE PURCHASER—NOTICE.

A party receiving as collateral security a vendor's lien note from the maker, the vendee, bearing the indorsement of the vendor, the payee, was not a purchaser in due course of trade.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 909–912, 961; Dec. Dig. § 357.*]

8. VENDOR AND PURCHASER (§ 260*)—TRANSFER OF LIEN NOTES—RIGHTS OF PARTIES.

A vendee gave two lien notes to the vendor, one of which she transferred to plaintiff, and the other she indorsed and redelivered to the vendee, who transferred it to intervener as collateral security for a debt owing by the vendee to the intervener. The transfer of the note from vendor to vendee was with intention that he become the absolute owner, though it may have been agreed that he should retain it and use it as collateral. Held that, as to plaintiff and intervener, the transfer from vendor to vendee discharged the lien, so that, on foreclosure by plaintiff, the intervener's lien was subsequent to that of the plaintiff, but intervener was next entitled after the plaintiff as against vendor and vendee, and, if there was any resi-

due after discharging his obligation, he would hold it as trustee for them.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 664–669; Dec. Dig. § 260.*]

**9. ALTERATION OF INSTRUMENTS (§ 8*) — INDORSEMENT ON NOTE.**

It was error to permit the attorney for intervener, after trial had begun, to write into the indorsement of his note, over the signature of the vendor, "Pay to the order of C.," the intervener; such indorsement showing a direct transfer to intervener, which was not the fact, as shown by the prior indorsement, and the evidence showing that the intervener received the note from the vendee, the maker.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 40–46; Dec. Dig. § 8.*]

**10. DEPOSITIONS (§ 88*) — ADMISSIBILITY IN EVIDENCE.**

The depositions of the vendee and intervener showing the facts as to the indorsements and transfers of intervener's note were properly admitted; there being nothing to show that the trial court considered the depositions of one of the parties as against the other.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 234–236½, 242–245; Dec. Dig. § 88.*]

**11. VENDOR AND PURCHASER (§ 280*)—ASSIGNMENT OF VENDOR'S LIEN — PLEADINGS — SWORN DENIAL OF ASSIGNMENT.**

A vendee holding two lien notes transferred one to plaintiff, and the other she indorsed and redelivered to the vendee, who delivered it to C. as collateral security for a debt owing by the vendee. On a suit to foreclose by plaintiff, C. intervened, and after trial was begun was permitted to alter the vendor's indorsement of C.'s note by inserting the words, "Pay to the order of C." *Held* that, as the vendee did not deny the indorsement as first made, it was not error to admit evidence to prove ownership, assignment, or transfer affecting the right of the intervener, without denial of the assignment by vendor under a sworn plea.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 784–789, 791; Dec. Dig. § 280.*]

Appeal from District Court, Sherman County; D. B. Hill, Judge.

Suit by J. W. Smith against M. B. Cooley and Mattie Cooley on a vendor's lien note executed by M. B. Cooley to Mattie Cooley, and by her transferred to plaintiff. Henning Chambers intervened, setting up a similar lien note. From a judgment foreclosing the liens and directing the proceeds to be apportioned between plaintiff and intervener, plaintiff appeals. Reformed and affirmed.

E. C. Gray, of Higgins, for appellant. M. Cammack, of Stratford, for appellees.

HUFF, C. J. The appellant, J. W. Smith, brought this suit originally against M. B. Cooley and Mattie Cooley, on a vendor's lien note for $2,000, dated January 10, 1912, with 8 per cent. interest per annum and the usual 10 per cent. attorney's fees executed by M. B. Cooley to Mattie Cooley, who transferred the note before maturity to appellant, J. W. Smith; appellant praying for a foreclosure of the vendor's lien upon section 45, block 3 T, Sherman county, Tex. Afterwards Henning

Chambers intervened, setting up that he was the holder of a note for $3,000, executed by M. B. Cooley to Mattie Cooley, which was a vendor's lien on the above section of land, and that he held it as collateral to secure a loan made by the intervener to M. B. Cooley, for the sum of $525. The appellant filed a supplemental petition in answer to Chambers' plea of intervention, alleging that intervener did not acquire the $3,000 note from Mattie Cooley but from M. B. Cooley after M. B. Cooley had become the owner and the holder of the $3,000 note, and that he was at the same time the owner of the land upon which the vendor's lien existed to secure the $3,000 note, and that the lien was thereby canceled, and that Chambers was not a purchaser in good faith without notice, etc. The case was tried before the court without a jury, who rendered judgment July 15, 1913, foreclosing the lien as prayed for by both appellant and intervener, rendering judgment for each in the amount of their respective notes, with interest and attorney's fees, foreclosing the lien against Mattie Cooley, who was regularly served in this state, and who failed to answer, and against M. B. Cooley upon nonresident notice, he at the time being a nonresident of the state, and decreeing a sale of the land, directing that the proceeds from the sale be apportioned between the plaintiff and intervener in proportion to the amount recovered by each. Appellant appeals and assigns error.

On the 10th day of January, 1912, Mattie Cooley conveyed to M. B. Cooley section 45, block 3 T, situated in Sherman county, Tex., by warranty deed, for the recited consideration of $12,000, $7,000 cash and two vendor's lien notes of even date therewith, one for $2,000, due 12 months after date, and one for $3,000, due 15 months after date, retaining in the deed a vendor's lien to secure the payment of the notes. M. B. Cooley executed the two notes called for in the deed, payable to Mattie Cooley or order, each bearing interest at the rate of 8 per cent. per annum from date, interest payable annually, with 10 per cent. as attorney's fees, reciting in each note that they were given as part of the purchase money for the land described in the deed. The note for $2,000 has indorsed on it: "For value received, I, Mattie Cooley, hereby sell, transfer and assign the within and foregoing vendor's lien note to J. W. Smith, and all my right, title and interest therein. [Signed] Mattie Cooley." The $3,000 note declared on by intervener has indorsed on it: "Without recourse. Mattie Cooley." After the parties had announced ready for trial, the attorney for intervener, by permission of the court, and over the objection of appellant, added the words "pay to the order of Henning Chambers" between the words "without recourse" and "Mattie Cooley," making the indorsement to read after the interlineation:

"Without recourse, pay to the order of Henning Chambers. Mattie Cooley."

The ex parte deposition of M. B. Cooley was taken, in which he testified that he executed the two notes for $2,000 and $3,000, for the land in question; that Mattie Cooley is his mother. "I became the owner of the $3,000 note immediately upon its execution about January 10, 1912; my mother indorsing and delivering the note to me at Enid, Okl. We were making trades among ourselves about which Mr. Smith knows all about, and in this trade I got the $3,000 note from my mother. Mattie Cooley was not the owner of the $3,000 note on and after March 8, 1913, and I owned the note for $3,000 in January, 1912, when it was indorsed back to me by my mother." He testified that Henning Chambers got the note from him and paid him therefor, and that his mother had no interest in the note.

The intervener, Henning Chambers, testified by ex parte deposition: That he came into possession of the note through the inability of M. B. Cooley to pay a note owing Chambers by M. B. Cooley, and that the $3,000 note was pledged as collateral to secure Cooley's note to him. At the time he loaned Cooley the money, his information was Cooley had the right to pledge the note, and he did not inquire into the history of the note. He got possession of the note the latter part of November, 1912. On April 26, 1912, he loaned Cooley the sum of $150. On November 20, 1912, Cooley requested an additional loan, which Chambers declined without additional collateral security. "He (Cooley) told me he had this $3,000 note and I agreed to loan him $425 additional, providing he would make a note for the full amount of his debt to me, pledging the $3,000 lien note as collateral. This he agreed to do, and I gave him two checks of my firm on the Union National Bank, one for $50 and one for $325, and he thereupon executed a note for $525, naming the $3,000 lien note as collateral. A few days later he brought in the $3,000 note, and it was attached to his note in my favor." He did not remember positively that Cooley told him he was the owner of the note, but that Cooley did assure him he had the right to pledge it as collateral. He assumed M. B. Cooley would be the owner of the $3,000, providing he settles the indebtedness for which it was held as collateral.

The trial court found that the $3,000 note was indorsed back to M. B. Cooley for negotiation. He further finds it was the intention of Mattie Cooley and M. B. Cooley, at the time of the indorsement of the note, that the obligation should not be discharged. "But that it was their purpose that said note, with the lien securing same, should be negotiated as a valid obligation and lien, and Henning Chambers took said note, believing and understanding that said M. B. Cooley had the perfect right to negotiate same." The trial court held, as shown by his findings of fact and conclusions of law, that, as Mattie Cooley's indorsement was not assailed as a forgery, the indorsement should be taken as approved. We do not understand that appellant assails the indorsement made by Mattie Cooley, but only that part which was interpolated after going into trial. Appellant in fact relies on the indorsement as showing that the title to the note and the lien retained to secure its payment in fact passed out of Mrs. Cooley. It is not claimed to be a forgery, but, on the contrary, that it is her signature, and that she assigned the note thereby.

[1] In this case the intervener has alleged that he held the note as collateral to secure a note owing him by M. B. Cooley. We think, under the pleadings in this case, appellant had the right to show that the note had been discharged after it was transferred by Mrs. Cooley and to require the intervener to show the indebtedness due under the obligation for which he held it as collateral. This court has heretofore so held in the case of Handley v. Bank, 149 S. W. 742. See Wright v. Hardie, 88 Tex. 653, 32 S. W. 885.

[2] The appellant, by assignment, asserts that the trial court was in error in foreclosing the lien and ordering a sale of the land to pay the $3,000, on the ground that the evidence in this case shows that there was a merger of the legal and equitable title in M. B. Cooley, when he purchased or had assigned to him the $3,000 note. "Merger at law is defined to be 'when a greater estate and less coincide, and meet in one and the same person in one and the same right, without any intermediate estate.' The rule in equity is the same as at law, with this modification: That at law it is inflexible, whereas in equity it is clear that a person may become entitled to an estate, subject to a charge for his own benefit, and if he chooses can hold the estate and keep the charge alive. It becomes a question of intention in the person in whom the two interests are invested." Wonderly v. Giessler, 118 Mo. App. 708, 93 S. W. 1130; James v. Morey, 2 Cow. (N. Y.) 246, 14 Am. Dec. 475. A party who is primarily responsible for an incumbrance, and who is the owner of the fee and acquires the incumbrance, it is extinguished by a merger in the fee, and the merger cannot be prevented by having the holder of the second debt go through the form of transferring it to the owner of the fee. Wonderly v. Giessler, supra; Hussey v. Hill, 120 N. C. 312, 26 S. E. 919, 58 Am. St. Rep. 789; Byington v. Fountain, 61 Iowa, 512, 14 N. W. 220, 16 N. W. 534; Johnson v. Walter, 60 Iowa, 315, 14 N. W. 325; Lappen v. Gill, 129 Mass. 349; Ryer v. Gas, 130 Mass. 227.

[3, 4] The possession by the maker of a note is prima facie evidence that the note has been paid. Kneeland v. Miles, 24 S. W. 1113; Reynolds v. Skelton, 2 Tex. 517; Stephens v. Moodie, 30 S. W. 490; Close v. Fields, 2 Tex. 237; Id., 13 Tex. 625. "The delivery

of a note by the owner to the maker with intent to discharge the debt discharges the debt." The transfer of the note by Mattie Cooley to M. B. Cooley manifested the intention on the part of the vendor, the payee in the note, that her vendee, the maker thereof, should thereafterwards hold such note absolutely as his own property. Thenceafterward the possession and right are concurrent in the same person, and the transfer is perfect and irrevocable. Deussen v. Moegelin, 24 Tex. Civ. App. 339, 59 S. W. 51. In aid of that presumption the undisputed evidence is that Mattie Cooley indorsed and delivered the note to M. B. Cooley, whose note it was, and who swears he owned it thereafter and now owns it. This transfer was in consideration of a trade between the parties. In order to secure money, Cooley executed his note to intervener for $525, and placed the $3,000 note up as collateral to his note some ten months after it became his property. It would not be contended under such facts that Mattie Cooley could maintain a suit against M. B. Cooley on this note and foreclose the lien on the land.

In the consideration of the question of merger, it will be well to observe in each case the distinction which 1 Jones on Mortgages, § 870, calls to attention. "When a mortgagor pays his mortgage debt, his object is generally to fulfill the personal obligation of payment and release his estate of the incumbrance. * * * It must follow, therefore, that while, as a general rule, the mortgagor's intention is to extinguish the mortgage, the mortgagee, on the other hand, almost always desires to hold the title he has and simply to acquire the title which he has not." So, when the courts say that a merger will be prevented when it is the intention of the parties that there shall be no merger, that too has its limitation. 2 Pomeroy, § 796. "Under these circumstances, the distinctive question to be now examined is whether it is possible for a party thus paying off a charge to keep alive as a subsisting incumbrance in any manner by any form of procedure, or whether the charge must necessarily merge in the ownership and cease to exist. If it cannot possibly be kept alive, then all further questions of the party's intention, express or presumed, are meaningless. If a merger is not necessary, and the charge can be kept alive, then the question concerning the party's intention, express or presumed, and of the benefits to himself, will of course arise and will be governed by the rules formulated in the preceding subdivisions." Section 797. "An owner of the fee, subject to a charge, who is himself the principal and primary debtor, is liable personally and primarily for the debt secured, and cannot pay off the charge in any manner or by any form of transfer keep it alive. Payment by such a person and under such circumstances necessarily amounts to a discharge. The incumbrance cannot be prevented from merging by an assignment taken directly to the owner himself or to a third person as trustee. This rule applies especially to a mortgagor who continues to be the primary and principal debtor." A party personally liable for the debt, who pays the same, is not subrogated to the rights of the mortgagee. "Even if he should receive a formal assignment, the mortgage could not thus be kept alive, but would be wholly merged and ended." 3 Pomeroy's Equity, § 1213; 1 Jones on Mortgages, § 864.

[5] We think the evidence in this case shows conclusively that M. B. Cooley became the owner of the note of $3,000; that he got it in a trade between the parties, presumably with himself and mother. The fact they may have agreed that he should negotiate it and that it was his intention that the debt should not be extinguished cannot, as we see it, aid Cooley or the intervener in this case. The obligor and obligee united in the same person. It would be an anomalous proceeding to permit Cooley to sue himself, asking for a judgment for the debt and foreclosure of the lien against his land and sale of the land to pay himself the debt, interest, and costs of suit, which he himself owes. To permit him to hold this debt as a charge against the land and through intervener, who admits he does not own the debt and share on a parity ratably in the proceeds, would be to aid the obligor to appropriate the funds to his own use, when he himself is personally liable on the debt. And, owing to the fact that he is now, and was at the institution of this suit, a nonresident, no personal judgment was or could be taken against him; yet his trustee, Chambers, can absorb three-fifths of the funds derived from the sale of the land. Such a proceeding would operate as a fraud against appellant, which we do not think a court of equity will permit by interposing to defeat a merger because Cooley intended otherwise. It is sometimes said that mergers are not favored in equity or that "mergers are odious in equity." This is doubtless true when injustice would result thereby; but, where a just right or debt in another may be defeated by setting up a mortgage or lien by a party whose duty it is to pay, we think equity is equally as ready to manifest aversion to such attempt, and that both law and equity coincide to prevent it." 2 Pomeroy, Equity, § 794. The form of the assignment, transfer, or words used in a case of this kind do not so much control as will the relation subsisting between the parties. Ryer v. Gas, 130 Mass. 227. In order to prevent a merger, it should be clearly shown that some beneficial interest will be served by keeping up the distinction between the legal and equitable estate. Gardner v. Astor, 3 Johns. Ch. (N. Y.) 53, 8 Am. Dec. 465. A court will never permit a lien to be kept afoot for the purpose of endangering subsequent bona fide purchasers under the very party who has thus consolidated in himself the legal and equitable title. What

motive can a man have who owns the equity of redemption, owed the debt secured by a lien on his land, in buying in and having transferred to himself such debt and lien and keeping it afoot against his land? We can see no use but a mischievous one as against a holder of a lien and debt by others for which he is liable and to prevent its collection and to prevent the funds liable therefor being applied to the satisfaction of such debt. Starr v. Ellis, 6 Johns. Ch. (N. Y.) 393.

[6] It has been suggested by appellee that the lien reserved in the deed was only one given to secure the two notes, and therefore there could be no merger. We think the interest and position of appellant is distinct from that of M. B. Cooley, and should be treated as if there were two separate liens or mortgages. If the land should not sell for enough to satisfy both notes, Cooley would be personally liable for the residue on appellant's note. We see no necessity for a circuity of route; that is, sell the land to pay the $3,000 note, and set it over to Cooley or his trustee, after which require appellant by some kind of a proceeding, to impound the money so set over to Cooley.

[7] It is urged by appellee, the intervener, that he in law is a purchaser in due course of trade and therefore entitled to recover the entire principal, interest, and attorney's fees on the collateral note and to share equally and ratably with appellant in the proceeds under foreclosure. This contention the trial court sustained and gave intervener such a judgment. Having secured possession of the note from the maker, with the payee's indorsement, we do not think it can be said that intervener was such purchaser in due course of trade. He was bound to take notice that the payee had parted with the title to the note, and that it was in the hands of the party personally and primarily liable thereon. It was certainly sufficient to notify him that the obligor and obligee were merged in one, and that the same person at that time held both the legal and equitable title to the land which secured this note. In taking it as collateral under the circumstances he did, he got no better right than Cooley then had. As seen by what we have heretofore said, it would be inequitable to allow Cooley to share in the proceeds of the foreclosure until appellant's note is fully satisfied. The intervener has no better right than Cooley. It has been expressly held by the courts of this state that a note taken from the hands of the maker, it being made payable to a named person or bearer, is not taken in due course of business, and it would be the duty of the purchaser to inquire. Battle v. Cushman, 33 S. W. 1037; Eck v. Schuermeyer, 29 S. W. 241; Downing v. Neeley et al., 129 S. W. 1192; Kneeland v. Miles, 24 S. W. 1113; Tiedeman on Commercial Paper, § 294.

[8] We believe, under the facts of this case, that appellant is entitled to have his judgment first satisfied out of the proceeds from the foreclosure and the remainder appropriated to the judgment obtained by appellee, the intervener. "It is to be observed that, while after payment the parties thereby discharged cannot be bound by its reissue, still bills and notes may remain negotiable after payment, so far as respect the parties who shall knowingly negotiate the same afterwards, for in such case the negotiation cannot prejudice any other person and will only charge themselves." 2 Daniel on Neg. Inst. § 1242. In this case Cooley, after the discharge of his obligation, could, if he saw proper, negotiate the note and the lien, and, intervener having accepted the same from him, we believe that the end of justice will be met by holding it a subsequent lien on the land to that held by appellant. When intervener's obligation is discharged, if there is any residue, he will hold the funds as the trustee for Cooley. M. B. Cooley being personally and primarily liable for the note held by intervener, the form of the transfer of the lien to Cooley cannot change the nature of the transaction. He was bound to pay off and discharge the lien, and the rule applies that, when money paid by one whose duty it is, by contract or otherwise, to pay the mortgage, it is a release, though in form it purports to be an assignment. The subsequent assignments of the mortgage by Cooley could give no title to the intervener as against appellant. Carlton v. Jackson, 121 Mass. 592. It follows, therefore, as to appellant, the note was discharged, and intervener could not participate in a foreclosure of the lien reserved to secure both notes, but as between Cooley and the intervener a lien may be recognized in the latter's favor on the land, but subject to the prior right of the appellant.

[9] We think the court was in error in permitting the attorney for intervener, after the trial had begun, to write into the indorsement, over the signature of Mattie Cooley, "Pay to the order of Henning Chambers." This alteration entirely changed the indorsement on the note from what it was at the time the intervener came into possession of the note. If this indorsement had been so made when he purchased, perhaps the contention of appellee as to the necessity of sworn pleadings, in order to impeach the indorsement, would be correct. This addition shows a direct assignment to appellee by Mattie Cooley. This was not the fact, as shown by the indorsement, when appellant and appellee announced ready for trial. We recognize the rule that a bona fide purchaser of a negotiable instrument may write his name into a blank indorsement. Appellee was not such in this case as we have above shown, and to give the indorsement that appearance was a material alteration and was an error on the part of the court in permitting it. Such action, however, ought not; and.

we believe will not, affect the rights of the parties, but these rights should be determined as if no such alteration had been made.

[10] Appellee, by cross-assignment, complains at the action of the court in admitting in evidence the deposition of Cooley and Chambers. Their depositions were each taken ex parte, and a bill was taken by appellee to the action of the court in admitting them. There was no error in admitting the depositions of each as against him, and there is nothing in the bill of exceptions showing that the trial court considered the depositions of one of the parties as against the other. The testimony of Chambers shows he came into possession of the note from the maker, with the indorsement thereon of Mattie Cooley. He testified he thought M. B. Cooley had the right to transfer it. By receiving the note in the manner he did as a collateral, he should be charged with notice that it had merged in M. B. Cooley. The presumption of law is when he took it from M. B. Cooley, the maker of the note, that it was discharged, and there is no evidence to the contrary. This testimony, we think, was sufficient to postpone the lien held by him. The same may be said as to M. B. Cooleys' deposition

We think the evidence is sufficient to support a decree to the conclusions as above expressed by us; that is, that appellant should be first paid. There is no injury shown by the admission by the trial court of the depositions of Cooley and Chambers.

[11] Appellee's second cross-assignment is to the effect that the trial court erred in admitting any testimony to prove the ownership, assignment, or transfer in any way affecting the right of intervener, because there is no denial of the assignment made by Mrs. Cooley under a sworn plea.

The pleadings of appellee in this case allege that appellee came into possession of the note from the maker, M. B. Cooley, to secure a note for $525, due him by Cooley. It appearing that the note was discharged by the right and possession concurring in the same person before appellee got possession thereof, therefore appellant had a good defense against same as a lien equal to or prior to his note or lien. It therefore devolved upon the appellee, who held his note as collateral security, to make proof that the debt secured by his note had not been paid, and how much was due on it. And, under the peculiar facts of this case, we further think he should, when his own allegation and evidence showed that he was a holder by delivery from the maker, show that he in fact was a bona fide purchaser of this note without notice of its satisfaction or discharge. This he did not show. Harrington v. Claflin & Co., 91 Tex. 294, 42 S. W. 1055; Wright v. Hardie, 88 Tex. 653, 32 S. W. 885. As heretofore noted, appellant does not deny the indorsement made by Mattie Cooley, but does deny

the one interpolated by appellee upon the trial. This he should not, and we do not think was required to deny under oath when it was made over his objection in open court by permission of the court.

We believe the court was in error in adjudging that appellee should participate equally in proportion to the amount of the $3,000 note, principal, interest, and attorney's fees. The judgment should be reformed, giving each appellant and appellee foreclosure of the lien for their respective amounts, and directing the judgment for appellant, principal, interest, and attorney's fees, and his costs be first paid out of the proceeds derived from a foreclosure sale, and the residue, if any, be applied on the judgment obtained by appellee.

The judgment is reformed and will be affirmed, with costs against appellee.

Reformed and affirmed.