SOUTHERN COMMERCIAL & SAVINGS BANK v. COMBS et al.  (No. 1230.)

(Court of Civil Appeals of Texas.  Amarillo. May 22, 1918.)

1. BILLS AND NOTES ⬅️342 — BONA FIDE PURCHASERS—PURCHASE FROM MAKER—INDORSEMENT OF PAYEE — "DUE COURSE OF TRADE."

Where one acquires negotiable paper from the maker thereof, even before maturity, which bears the indorsement in blank of the payee, the note is not acquired in due course of trade, and such purchaser takes it, not as a bona fide holder, but subject to all outstanding equities.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Course of Business.]

2. BILLS AND NOTES ⬅️524 — BONA FIDE PURCHASERS—EVIDENCE.

Evidence *held* to show that defendant bank did not acquire notes in suit in good faith and in due course of business.

3. APPEAL AND ERROR ⬅️1170(3, 7)—SCOPE OF REVIEW — MATTERS NOT NECESSARY TO DECISION.

Questions on appeal as to sufficiency of pleadings, admission of evidence, and depositions are immaterial, where no prejudice resulted, in view of rule 62a (149 S. W. x), prohibiting a reversal of judgment on the ground of error of law unless the appellate court is of the opinion that the error amounted to a denial of rights reasonably calculated to cause the rendering of an improper judgment.

Error from District Court, Dallam County; D. B. Hill, Judge.

Suit by Mrs. Laura E. Combs and husband against L. E. Finley, the Southern Commercial & Savings Bank, and others.  Judgment for plaintiffs, and defendant Bank brings error.  Affirmed.

Veale & Lumpkin and Kimbrough, Underwood & Jackson, all of Amarillo, for plaintiff in error.  Tatum & Tatum, of Dalhart, for defendants in error.

HALL, J.  Mrs. Laura E. Combs, joined by her husband, filed this suit in the district court of Dallam county against L. E. Finley, Ike Levingston, J. L. Callahan, J. L. Newell, and Southern Commercial & Savings Bank, alleging in substance that defendants in error were the owners of certain land and personal property situated in Dallam county, Tex.; that they were induced by the fraud of Finley, Levingston, and one Steffins, the agent of Levingston, to convey said property to one J. L. Callahan; that thereafter within a short time Callahan conveyed said property to Levingston in consideration of seven notes, executed by the said Levingston to Callahan, one in the sum of $5,000 and the other six for $150 each, and to secure the prompt payment of said notes Levingston, joined by his wife, executed a deed of trust upon said property; that Southern Commercial Savings Bank,

with notice of the fraud perpetrated upon said defendants in error, purchased said notes. The transaction is set out at great length in the pleadings, and the prayer is that the deed conveying the property to Callahan and the deed from Callahan to Levingston, together with the deed of trust executed by Levingston and wife to Newell as trustee, be canceled and held for naught; that the cloud thereby cast upon the title of defendants in error be removed and that they have judgment for costs.  Plaintiff in error bank answered by general and special exceptions, general denial, and by special answer alleged that it was an innocent purchaser for value before maturity of the notes mentioned; that it purchased the same on or about November 30, 1914, in due course of trade; that the consideration given therefor being that said bank at the instigation of the defendant Steffins and the defendant Levingston loaned to the defendant Levingston the sum of $3,500, and took said notes from the defendant Steffins as collateral security for the note executed by the defendant Levingston; that said bank exercised ordinary care to ascertain the value of said notes as well as the security given for them, thereby obtaining said notes and deed of trust as collateral security for its loan of $3,500 to Levingston.  By way of cross-action plaintiff in error bank sought to recover upon its said note for $3,500, and by virtue of the provisions in deed of trust declared the $5,000 note and the six $150 notes all due by reason of a failure on the part of the makers to pay the first note of $150, and prayed for judgment upon all of said notes, for a foreclosure of its pledgee's lien on the collateral notes, and for foreclosure of the deed of trust upon the property in Dallam county.  Upon a trial before the court without a jury there was judgment for defendants in error in accordance with the prayer of the petition and awarding a writ of possession. It is conceded by plaintiff in error that the evidence is sufficient to show that Levingston and Finley obtained the deed from Mrs. Combs by fraud, but it is insisted by plaintiff in error that it is an innocent purchaser for value before maturity of said notes and as such purchaser should be protected.  Under this contention the inquiry is, Does the record contain evidence to support the judgment of the court against plaintiff in error?

[1] The rule is established in this state that where one acquires negotiable paper from the maker thereof, even before maturity, which bears the indorsement in blank of the payee, the note is not acquired in due course of trade, and such purchaser takes it, not as a bona fide holder, but subject to all outstanding equities.  Texas Land & Mortgage Co., Ltd., v. Cooper et al., 67 S. W. 173, and authorities there cited; Smith v. Cooley, 164 S. W. 1050 (writ of error denied).  It was shown that W. A. Kammerer was the cashier of

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

plaintiff in error bank and resided in St. Louis, where it seems the fraud was perpetrated. He testified that he made the loan to Levingston which was secured by the $5,000 note and the deed of trust in question; that the $5,000 note was signed by Ike Levingston and wife, M. R. Levingston, payable to the order of J. L. Callahan, and indorsed in blank by Callahan; that about four or five days before he made the loan on November 30th Steffins came into the bank with Levingston; that "Steffins made the arrangements, did the talking," and said that he had a $5,000 note and deed of trust on some land in Texas, and wanted to know "if the note and deed of trust were put up back of the note signed by Levingston if the bank would lend money on it"; that when Steffins and Levingston came to the bank Steffins gave witness the notes and papers, witness drew up the $3,500 collateral note, which Mr. Levingston signed, and the amount was credited to Levingston's account. It further appears that Finley and Steffins were employed by Levingston as his agents, to assist him in disposing of some unprofitable laundry property which Levingston owned in St. Louis, and that this transaction is a part of their effort along that line.

J. F. Edwards, a witness for defendant in error, testified that he saw W. A. Kammerer in the bank in St. Louis on the morning of March 8th; that in a conversation with Kammerer the witness explained the matter to him and that Kammerer said he had investigated the value of the land, but had left it to Levingston; that he knew nothing about Callahan; and that he got the notes from Ike Levingston and was holding them as collateral for Levingston's debt. The witness Edwards further stated that Kammerer told him that he held the papers in the bank in escrow before the deal was consummated, and that Finley, Levingston, and Steffins left them in there together with a bill of sale of the laundry, and that the deal was made in the early part of November, the papers remaining there until the first of December. Witness Edwards repeated his statement that Kammerer told him Levingston had delivered the notes to him, and did not say anything about Steffins having delivered them; that the bill of sale to the laundry was held for Finley; and that the notes and deed of trust were held for Levingston.

[2] This evidence, when considered in connection with other testimony in the record, not necessary to be set out here, is sufficient to warrant the court in concluding that the bank did not acquire the notes in question in good faith and in due course of business. The slightest degree of diligence in making inquiry would have enabled Kammerer, as an officer and representative of the bank, to learn of the fraud out of which the notes originated. Determination of the question presented by the first two assignments practically decides the entire controversy.

[3] There are a number of other questions relating to the sufficiency of the pleadings, admission of evidence, and deposition testimony which become immaterial in view of what has heretofore been said under rule 62a (149 S. W. x).

These assignments are all overruled, and the judgment is affirmed.

HUFF, C. J., not sitting, being absent in Austin assisting committee of judges.