**BEAUCHAMP et al. v. ZELLMER et al.***
**No. 289–3545.)**

(Commission of Appeals of Texas, Section A.
March 1, 1922.)

**1. Bills and notes ⬤⟿342—Purchaser of negotiable note from maker held to take subject to equities.**

One who acquires from the maker, even before maturity, negotiable paper indorsed in blank by the payee, takes it subject to all outstanding equities.

**2. Bills and notes ⬤⟿174—Reissue of note by maker held not invalid.**

That a negotiable note was received from the maker, thereby raising the presumption that it was paid, does not render its reissue invalid, as a bill or note may be negotiable after it is paid.

**3. Mortgages ⬤⟿151(6)—Vendor's lien note held prior to subsequently recorded deed of trust.**

Vendor's lien note purchased by a bank from the maker, to whom the payee has indorsed it in blank to be used to secure a loan, *held* prior to the lien of an existing but subsequently recorded deed of trust securing other notes of the same maker executed without consideration for a like purpose, and one who purchased the latter notes with knowledge of the pendency of an action by his assignor to cancel the note held by the bank as fraudulent is not entitled to priority over that note.

**4. Mortgages ⬤⟿154(2)—Directed verdict as to priority of vendor's lien note over other notes held proper.**

Where, in a suit to cancel a vendor's lien note on the ground of fraud, the evidence clearly shows that plaintiff purchased other notes executed by the same maker and secured by a deed of trust recorded subsequently to defendant's purchase thereof, at considerably less than their face value, knowing of his assignor's suit to cancel the vendor's lien note, but made no inquiry, from which he would have discovered that both sets of notes were obtained from the maker without consideration, the court properly instructed a verdict for defendant as owner of the prior lien; the evidence clearly showing that plaintiff did not act in good faith.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by J. R. Beauchamp and others against C. J. Zellmer and others. From a judgment of the Court of Civil Appeals (227 S. W. 965), affirming a judgment of the district court for defendants, plaintiffs bring error. Affirmed.

W. W. Ballew, of Corsicana, for plaintiffs in error.

C. A. Davies, Robt. P. Coon, and R. L. Neal, all of San Antonio, for defendants in error.

RANDOLPH, J. C. J. Zellmer, the owner of certain town lots in the city of San Antonio, on the 20th day of January, 1913, entered into a contract for a sale of the lots to B. L. Herring. The consideration recited in the contract was $450 cash, the assumption by Herring of a payment of a note for $1,000 held by the State Bank & Trust Company of San Antonio, and certain other notes held by Herring which were to be transferred to Zellmer.

By deed dated the 1st of February, 1913, Zellmer conveyed the lots to Herring, and the consideration stated in the deed was identical with that in the contract, with the addition of a vendor's lien note for $3,000 signed by Herring and payable to the order of Zellmer on February 1, 1914. This last note was presented to Zellmer, when he went to the office of the agent Berry, with the request that he indorse same for Herring's use. This he at first refused to do, but on Berry's stating that Herring would not close the trade unless it was done, and that Herring had to have the note so that he could get the money to pay the $450 cash payment and to settle the note for $1,000 at the San Antonio State Bank, and being assured that it would not be a personal liability against him (Zellmer), he indorsed same in blank and turned it over to Berry for Herring. Herring then took this $3,000 note, and, on the 10th of February, 1913, sold it to the Bank of Minden, La., receiving from the bank $3,000, which was paid by the bank sending $1,000 to the State Bank at San Antonio, and giving Herring's checking account credit for $2,000.

On the 4th day of February, 1913, by deed of trust of that date Herring conveyed the lots to J. L. McCaughey, trustee, to secure the payment of three notes in the sum of $1,200, $3,150, and $3,150, respectively, and payable to the order of Sidney Landsford in one, two, and three years after date. These notes aggregating the sum of $7,500 will be hereinafter referred to as the $7,500 obligations.

By warranty deed dated February 18, 1913, Herring conveyed the lots to L. Lasater, reciting in said deed that the sale was made subject to the $3,000 note and the $7,500 obligations. The deed of trust to McCaughey was not recorded until January 2, 1917.

The evidence discloses that L. Beauchamp became the owner of the $3,150 notes of the $7,500 obligations on March 8, 1913, and further discloses that as the agent who negotiated the sale of the lots from Herring to Lasater, he, at the time of the sale to Lasater, had received the $1,200 note of that series, as his commission as such agent.

By quitclaim deed dated 11th of April,

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied April 5, 1922.

1913, L. Lasater conveyed the lots to L. Beauchamp.

The transcript in this case is in a very unsatisfactory condition, as it fails to include the pleadings of a number of the parties, but as no question is before the Supreme Court involving the transcript, we accept the statement of the Court of Civil Appeals as to the contents of the pleadings of the parties.

The district court on the trial of this case instructed a verdict for the Minden Bank as owner of the $3,000 note as a first lien and in favor of J. R. Beauchamp on the $7,500 obligation, subordinate to the lien of the Minden Bank, and judgment was rendered accordingly. On appeal the Court of Civil Appeals for the Fourth District affirmed the case. 227 S. W. 965.

Some of the assignments in the application for writ of error call in question the action of the Court of Civil Appeals in matters in which their decision is final, and we are limited to those questions involved in the various phases of the case which we will now discuss.

[1] The general rule in this state is: Where one acquires negotiable paper from the maker of it, even before maturity, which bears the indorsement of the payee in blank, the note is not acquired in due course of trade, and such purchaser takes it subject to all outstanding equities. Texas Land & Mortgage Co. v. Cooper (Tex. Civ. App.) 67 S. W. 175 (writ refused); Smith v. Cooley (Tex. Civ. App.) 164 S. W. 1050 (writ refused); Southern Commercial & Savings Bank v. Combs (Tex. Civ. App.) 203 S. W. 1169.

[2] This statement of the rule being correct, it results that when the Minden Bank purchased the $3,000 note from Herring, it took its status as of the date on which it was purchased, February 10, 1913, and the bank was charged with the knowledge of the rights of all adverse parties existing at that time. The fact that the note was received from the hands of the maker by the bank raising the presumption that it was paid does not render the reissue of it invalid. It takes a new status as of the date of its reissuance.

A bill may be negotiated after it is paid. Eaton v. McKown, 34 Me. 510. A note may remain negotiable after payment. 2 Daniel Neg. Inst. p. 248, § 1242; Smith v. Cooley, supra.

We therefore hold that the $3,000 note and lien securing same were valid and subsisting obligations by their reissuance on February 10, 1913, between the Bank of Minden and Herring and as to all other parties who did not have for their protection intervening equities.

[3] As a purchaser with notice, what was the Bank of Minden charged with at the time of the purchase of the $3,000 note? At that time they were charged with constructive notice of the deed from Zellmer to Herring executed on February 1, 1913, and recorded February 3, 1913. This was all that the record showed at that time, but the following are the facts shown to exist, independent of the record, of which they are charged with notice at the time of their purchase on the 10th of February, 1918: Herring on the 4th day of February, 1913, had executed a deed of trust conveying the land in controversy to one McCaughey as trustee, to secure the payment of three notes for $1,200, $3,150, and $3,150, respectively, and payable to the order of Sidney Landsford which deed of trust was not recorded until about four years thereafter.

The uncontradicted evidence shows that these notes were without consideration and were executed just as the note from Herring to Zellmer was, for the purpose of being used to secure a loan. This being the status of the $7,500 obligation at the time of the purchase of the $3,000 note by the Minden Bank, the $7,500 obligation did not at that time have such standing as to require that equity intervene for the protection of the holders thereof. For that reason, as well as for the additional reason below stated, the lien held by the Minden Bank to secure the $3,000 note was a prior legal lien to the lien made by Herring to secure the Landsford $7,500 obligation; the last being based on no consideration and being only a simulated transaction. The $7,500 obligation having at that time no legal existence, they could only become a charge against the land in controversy by their issuance to some other party, and they would take their status as of the date of their reissuance.

L. Beauchamp's testimony, and for that matter all of the evidence bearing upon that question, shows the following with reference to the transfer of the notes to him: L. Beauchamp was the agent who negotiated the sale of the property from Herring to Miss Lasater. This was on the 24th of February, 1913, two weeks after the purchase of the $3,000 note by the Bank of Minden. As his commission he received from Herring, the maker of same, the $1,200 note in the series of the $7,500 obligations, which were payable to Sidney Landsford. On the 8th of March, L. Beauchamp received the other two notes each for the sum of $3,150 from Herring, the maker of same. The notes were therefore issued at the time of their delivery to him by Herring, and took their dates as of the 24th of February, 1913, and the 8th of March, 1913; the last transaction being about a month after the purchase of the $3,000 note by the Minden Bank. Consequently the lien securing the Bank of Minden being of record, and L. Beauchamp securing the $7,500 obligations from the maker, he could claim no status other than of the very day

he took same from Herring, the maker. L. Beauchamp on or about the 10th day of April transferred these $7,500 obligations to his father, J. R. Beauchamp. The evidence shows that the consideration for such transfer was $5,000, $4,000 of which was represented by pre-existing debts and $1,000 in money. At the time L. Beauchamp sold these $7,500 obligations to his father, he had already filed this suit, and was seeking to cancel the $3,000 note. The evidence shows that he informed his father of this suit, telling him that the note was a fraudulent note, and that he was going to have it canceled. It is not clear whether the abstract contained the information as to this suit, but J. R. Beauchamp was put on full notice of the existence of this note in the hands of the Bank of Minden by the information furnished him of the pendency of the suit by L. Beauchamp at the time he purchased said notes. This is true even though he had the assurance from his son, L. Beauchamp, that the note was fraudulent. He was purchasing the notes from his son and could not claim that he was justified in taking them without further inquiry. If, as a prudent and diligent man, he had pursued the proper inquiry, he would have found that the $3,000 note and the obligations he was about to purchase were each based on no consideration. He would have discovered that both sets of notes were obtained from the maker of them. He is not only charged with constructive notice of the record of the deed from Zellmer to Herring, but he is also charged with the knowledge that the $3,000 note was reissued by Herring on the 10th of February, 1913, when he sold it to the Minden Bank, and that the $7,500 obligations which he was about to purchase had been reissued the 24th of February, 1913, and on the 8th of March, 1913, when same were transferred by Herring to Beauchamp and having purchased said notes for $2,500 less than the face value of same, such inadequate consideration would enter into the question of good faith on his part.

[4] If J. R. Beauchamp purchased these notes in good faith prior to maturity and without notice of the existing facts, his purchase would have left him subject to the lien to secure the bank's debt, and, if he had then been free from any imputed knowledge of his son's purchase of the notes from Herring, the maker, and of the real status of the $3,000 note, he would have been in a position to have claimed a prior lien as against the bank's lien; but we do not understand that he would be permitted to absolutely disregard the information furnished him and refuse to make any inquiry in order to determine what the suit on the note was really about and what the facts were. On the face of the record, the $7,500 obligations were a subordinate lien to the $3,000 note. He is attempting here to assert a priority over notes that were received from the maker, because of that fact, when he is asserting title to notes that reached his hands from the possession of the maker. In other words, he is asking the court to interpose its equity powers to postpone a lien when he is before the court in the same attitude. As we understand the case of Wilson v. Denton, 82 Tex. 535, 18 S. W. 620, 27 Am. St. Rep. 908, the Supreme Court has held that such a transaction is essentially a question of bad faith and not of constructive notice, and that it is a question for the court, and not for the jury. Therefore we think the trial court did not err in instructing the verdict as it did in this case because the evidence clearly discloses that J. R. Beauchamp did not act in good faith in the purchase of the $7,500 obligation.

We are of the opinion from an intensive study of the facts of the case that neither of the parties to this suit are entitled to any equitable readjustment of their liens. The case presents a most flagrant instance of blue sky operation.

Believing as we do that none of the parties to this hearing are entitled to the exercise of the equitable powers of the Supreme Court, and believing further that they should be relegated as to the priority of their rights to the record status, we recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

---

⊚ööFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes