BEELER et al. v. TERRELL et al.
(No. 2018.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 1, 1922. Rehearing Denied Dec. 13, 1922.)

1. Estates ⬥10(1)—Question of merger when owner of fee acquires charge against the land one of intent.

Where the owner of the fee acquires a charge against the land, the question of their merger is generally one of intent.

2. Vendor and purchaser ⬥261(1)—Evidence held not to support merger of lien of vendors' notes with fee of land.

Where one who acquired a part of the lands in fee was assigned vendors' notes to which the land was subject, evidence that he did not intend to pay the notes but purchased them through third parties was insufficient to establish a merger of the notes and lien with the fee of the land.

3. Vendor and purchaser ⬥261(4)—Purchaser of vendors' lien notes from one primarily liable for payment thereof takes subject to equities.

One acquiring vendors' lien notes by indorsement and assignment with constructive notice that the assignor was the owner in fee of the land covered by the lien, and that he was primarily liable for the payment of the notes, did not acquire the notes in due course, the rule being that one who acquires negotiable paper from the maker or from one who is primarily liable for its payment takes it subject to all outstanding equities when it is indorsed in blank or assigned by the payee, even though he gets it before maturity.

4. Bills and notes ⬥174—Reissue of note by maker held not invalid.

That negotiable notes were received from the maker, thereby raising the presumption that they were paid, did not render their reissue invalid, as a bill or note may be negotiable after it is paid.

5. Fraudulent conveyances ⬥302 — Evidence held insufficient to establish fraud in assignment of notes.

In a suit to recover upon 10 notes and to foreclose vendors' liens upon lands, evidence held insufficient to show transfer of the notes for the purpose of hindering, delaying, and defrauding the creditors of the maker, and to deprive the purchaser of the defense of bona fide purchase.

Appeal from District Court, Childress County; J. A. Nabers, Judge.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by J. F. Beeler and others against Claude Terrell and others. From a judgment for defendants, plaintiffs appeal. Affirmed in part, and reversed and remanded in part.

E. E. Diggs, of Childress, for appellants.

Aynesworth & Williams, of Wichita Falls, for appellees.

HALL, J. J. F. Beeler, one of the appellants, instituted this suit in the district court of Childress county, against his coappellant C. H. Morris, A. P. Minchew, Mrs. Mattie H. Minchew, W. D. Smiley, R. M. Bell, Claude Terrell, and Henry Hankins, to recover upon ten notes and to foreclose vendors' liens securing them upon certain lands in Childress county; eight of the first series of nine notes being for $500 and the other for $658.30, the tenth note being for the sum of $2,658.70. The facts out of which this suit originated are substantially these: One H. Smiley, on October 20, 1917, conveyed the lands in controversy to appellee, W. D. Smiley, taking as part payment the first nine notes above mentioned. Thereafter, on November 17, 1919, W. D. Smiley and wife conveyed the property to A. P. Minchew and R. M. Bell, and as part consideration they assumed payment of said nine notes and in addition executed and delivered to W. D. Smiley the tenth note above described in the sum of $2,658.70. On February 26, 1920, Bell and wife conveyed their interest in the land to Mrs. Mattie H. Minchew, the wife of A. P. Minchew. On February 16, 1920, A. P. Minchew conveyed his interest in the property to Mattie Minchew. Thereafter, on February 27, 1920, Mattie Minchew reconveyed the whole interest held by her to A. P. Minchew Prior to these conveyances and on January 7, 1920, W. D. Smiley transferred and assigned to A. P. Minchew the above-named note for $2,658.70, which had been given him by Minchew and Bell, and on February 4, 1920, H. Smiley also transferred and assigned to A. P. Minchew the nine notes given to him by W. B. Smiley. On June 1, 1920, A. P. Minchew, who was then the owner of all the lands mentioned and who also held all ten of the above-described notes, transferred and assigned them to appellant Beeler and at the same time by the writing, which assigned and transferred all of said notes to Beeler, he conveyed all his right, title, and interest in and to the land to secure the payment of the notes thereby assigned. This assignment was filed and recorded on July 5, 1921. The ten notes were assigned by Minchew to Beeler as collateral security to certain indebtedness due from Minchew to Beeler, evidenced by Minchew's note for $6,000.

The appellees, Claude Terrell and Henry Hankins, filed a suit, numbered 1086, upon the district court docket of Childress county, on July 31, 1920, against A. P. Minchew, upon a moneyed demand, and at the same time issued and had levied a writ of attachment upon the premises involved in this suit. They recovered a judgment in that suit against Minchew on May 11, 1921, and at execution sale under said judgment purchased the land in question on July 5, 1921. Prior to the purchase of this property by Terrell and Hankins, at execution sale, Beeler, on July 5, 1921, had filed and recorded a notice of lis pendens of this suit, which is (numbered 1139 on said docket, for foreclosure of the vendor's lien retained in his ten notes. The lis pendens notice was filed on June 30, 1921.

On the 6th day of August, 1920, A. P. Minchew conveyed the lands in question to C. H. Morris, in consideration of which Morris assumed payment of the ten notes sued upon and certain other indebtedness, and the payment of a stated cash consideration. No notice of lis pendens in suit No. 1086, above referred to, was ever filed or recorded in Childress county by Terrell or Hankins. The defendants, A. P. Minchew and C. H. Morris, answered, admitting their liability upon the notes. Beeler dismissed his suit as to Mattie Minchew, R. M. Bell, and W. D. Smiley. The appellees Terrell and Hankins answered, alleging that the notes had been paid; that they were purchased by Beeler for the purpose of hindering, delaying, and defrauding the creditors of Minchew, and especially these defendants. By cross-action they sued Morris for the land, charging that he had purchased the same from Minchew in fraud of Minchew's creditors, and to aid and abet Minchew in his fraudulent attempt to transfer his property beyond the reach of his creditors.

Morris answered this cross-action, denying their allegations and alleging specially that he was a purchaser of the property for a good, sufficient, and valuable consideration, and without any notice, actual, or constructive, of their claim, and prayed that he be quieted in his title and for possession. By a supplemental answer Terrell and Hankins alleged that in the purchase of said notes, if in fact Beeler had purchased them, the same was for the purpose of hindering and delaying the creditors of Minchew and especially these defendants; that it did have that effect; that Beeler had notice of the fraudulent intent and purpose of Minchew and knowledge and notice of such facts at and before the time he purchased the notes, which if reasonably pursued by him he would have ascertained the full purpose, intent, and effect of the transfer of said notes. In the same pleading, replying to the answer of Morris, they allege that he aided and abetted Minchew in his fraudulent attempt to transfer his property beyond the reach of his creditors for the purpose of hindering and delaying said creditors, and that he knew of such fraudulent purpose prior to the time the transfer of the land was made to him, or that

he was acquainted with such facts and had notice of such circumstances, which, if reasonably pursued, would have given him knowledge of Minchew's fraudulent purpose.

Appellant Beeler, as his first proposition, insists that, since he acquired the notes sued upon from Minchew, with a transfer of the lien upon the land to secure the payment, and paid a valuable consideration therefor, before Terrell and Hankins had acquired any title under their attachment, foreclosure proceeding, and judgment, and they having notice of such ownership of the notes and lien, and of the suit by lis pendens, and having also received actual notice when they purchased the land under the judgment of foreclosure, the court should have rendered judgment for him. In reply appellees insist that when Mrs. Mattie Minchew, on February 27, 1920, conveyed the land to her husband, A. P. Minchew, at which time he held all the notes, there was a merger of the notes and lien in the fee, effecting a cancellation of the notes and extinguishment of the lien, and that the transfer of the notes and land was in fraud of creditors.

[1, 2] The only testimony, aside from the written assignments, in this case bearing upon the issue of merger is the statement by Minchew that he did not intend to pay off the notes, but that through third parties he purchased them. At that time he did not own all the land. He purchased the nine notes February 4, 1920, and note No. 10, January 7, 1920. On February 26, 1920, Bell and wife conveyed their interest in the land to Mrs. Mattie Minchew, and on February 16, 1920, A. P. Minchew conveyed his interest therein to his wife. Afterwards, on February 27, Mrs. Minchew reconveyed the whole interest to A. P. Minchew. The question of merger, where the owner of the fee acquires the charge, is generally one of intent. This question was discussed by Huff, C. J., in Smith v. Cooley, 164 S. W. 1050, where it is said it becomes a question of intention in the person in whom the two interests are invested. West v. McCelvey Loan & Investment Co., 229 S. W. 913; Southern Commercial & Savings Bank v. Combs (Tex. Civ. App.) 203 S. W. 1169. This being the only evidence from which the intent of Minchew can be ascertained, we must hold that the lesser did not merge in the greater title.

[3, 4] When Beeler acquired the notes by indorsement and assignment from Minchew June 1, 1920, he took them with constructive notice of the fact that Minchew was then the owner in fee of the lands; that he was primarily liable for the payment of all the notes, since he had executed the tenth note and assumed the payment of the other nine. The rule is that one who acquires negotiable paper from the maker, or from him who is primarily liable for its payment, takes it subject to all outstanding equities when it is indorsed in blank or assigned by the payee, even though he gets it before maturity. Under these conditions Beeler did not acquire the notes in due course. Beauchamp v. Zellmer (Tex. Com. App.) 237 S. W. 911. The case just cited is authority for the further statement that a promissory note may be negotiated even after it is paid, and the fact that Beeler received the notes from the hands of Minchew, which raised the presumption of their payment, does not render the reissuance of the notes by Minchew invalid.

[5] The remaining contention to be considered, of appellees against appellant Beeler, is that the notes were transferred by Minchew for the purpose of hindering, delaying, and defrauding his creditors, and since Beeler's acquisition of them was under circumstances which deprived him of the defense of bona fide purchaser, the evidence is sufficient to show fraud in their assignment and to put Beeler upon notice to such an extent as to impeach his good faith in taking them as collateral security. The assignment of vendors' lien notes is within the registration statutes. Biswell v. Gladney (Tex. Civ. App.) 182 S. W. 1168; Id. (Tex. Com. App.) 213 S. W. 256. As affecting the issues of fraud, notice and the good faith of Beeler in taking the notes as collateral security for a loan of $6,000, the record discloses that he took them from the maker and the person primarily liable for their payment when the principal and accrued interest amounted to more than $8,000, and at a time when the maker held the fee of the lands for part of the purchase money for which they had been executed. Beeler did not testify, either in person or by deposition. Minchew testified by deposition only. By the same instrument which conveys the notes to Beeler, Minchew conveys all of his interest in the land, which he subsequently, on August 5th, conveys to Morris.

It appears from the statement of facts that at the time of the various assignments and transfers Beeler, Minchew, and Morris all resided in Denver. Minchew and Morris occupied the same office; Minchew had frequent business transactions with Beeler, who was vice president of the Metropolitan Bank of Denver; and it further appears that Minchew and Morris were stockholders, directors, and officers of a certain oil company, and together transacted the business for said oil company out of which the prior suit No. 1086 originated. Morris says that he, as secretary of the oil company, knew that it was having trouble in settling up the matters which finally resulted in suit No. 1086. Morris says he bought the land in question without an abstract and without previously consulting any one as to the condition of the title or its probable value. He says before buying it he came down to Childress from Denver on two occasions and looked it over, and that his confidence in Minchew was such that he did not deem it necessary to make

any further inquiry or demand an abstract. In his answer, Morris seeks no relief against Minchew in the event he should fail to recover the land, and says that when he assumed the notes in Denver they were at that time in Childress county. Our attention is called to the fact that the same attorney who filed this suit for Beeler as plaintiff also filed the answer of Morris and the waiver of citation for both Morris and Minchew. When asked to tell where he secured the $5,000 which he claims he paid Minchew in cash for the land, he said:

"I keep a lot of my papers in his strong box; I think when I took that $5,000 out of the strong box I had $500 left there; I had around $5,500 there then. I paid Minchew the cash on that land by means of a cashier's check. The occasion for my giving him a cashier's check was that I had certain troubles, and I had reasons to believe that other persons would garnishee my bank account if I put the money in the bank. Those troubles that I had were absolutely diverse to all business relations; they were private troubles. I was not afraid that my creditors would jump on my property; it was my former wife. I did not know that under the laws of the state of Colorado that they could garnishee my property and attach it; I never looked up the law. I was then hiding out my property and putting it in a strong box from my former wife; and I knew at that time that Minchew or anybody else could be doing the same thing. I know at this time that there was at that time a suit pending against Minchew that he had not paid. I know that I possibly could have found out about that at that time if I had searched the records. I did not know at that time that A. P. Minchew was having a great deal of trouble with his wife.

"Q. Don't you know as a matter of fact that Minchew has divorced his wife, and that he had a sensational scene in his office there at Denver, and that it was prior to that time? A. I want to be sure that I know when I say that I don't know about those domestic troubles. As I remember it, the domestic troubles hadn't come to my knowledge at that time. I knew about the divorce trouble. That came on later, and I know about the sensational scene, but I didn't know it at that time. I know his wife was often down here in Texas; she stayed down here a great deal of the time. I know that the banker called me up and told me about her account being overdrawn and I told Minchew about that when he came back to town; he had been out of town about four weeks at that time."

Hankins testified that he wrote Minchew several times about settling up the amount due under the contract, out of which cause No. 1086 arose, and that Minchew told him he didn't have any money and could not get any. The witness Raney testified that he wrote Minchew that the amount due under the contract must be paid by June 1, 1920, or suit would be filed and that they were not bluffing, they meant business. Aside from some evidence that Minchew and the oil company, which he was managing, had about $28,000 impounded in a lawsuit in Wichita county about the time of the transfer, this is practically all of the evidence disclosed by the record bearing upon the issues of Minchew's solvency, his fraud in transferring the notes and the land, and the good faith of Beeler and Morris in acquiring them. It is held that a plaintiff's claim to hold a note or other property as an innocent purchaser cannot be established as a matter of law, simply because evidence to that effect was uncontradicted, and that it was in the province of the jury or the trial judge, in the absence of the jury to pass upon the credibility of witnesses and to disregard evidence believed to be untrue, although such witnesses were neither impeached nor contradicted. Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447. This evidence, in our opinion, is sufficient to support the court's finding that the transfer of the land to Morris was fraudulent, but it is not sufficient to impeach Beeler's good faith in purchasing the notes. The fact that he purchased them from the maker and the party primarily responsible therefor, does not affect his good faith in the light of the holding by the Commission of Appeals in the Beauchamp-Zellmer Case. The facts simply raise the issue of fraud in the assignment of the notes, and upon this issue the burden rested upon the appellees. At the time of Beeler's acquisition of the notes there were no equities existing in favor of Hankins and Terrell. Their suit had not been filed, and no attachment had been issued for nearly 60 days after such transfer.

The judgment of the trial court is affirmed, in so far as it decrees a recovery of the amount of the notes against Minchew and Morris and denies Morris a recovery upon his cross-action for the title and possession of the lands, and so far as it dismisses from the suit Mrs. Mattie Minchew, R. M. Bell, and W. D. Smiley. In all other particulars the judgment is reversed, and the cause remanded.